PEOPLE *v.* DUBINA.

1. CONSTITUTIONAL LAW—CONSTRUCTION OF STATUTES—PRESUMPTIONS.

Statutes will be presumed constitutional where they may be construed in either of two ways, one of which is consistent with constitutionality.

2. SAME—DUE PROCESS—INSANE PERSONS—CRIMINAL LAW—COMMITMENT.

A defendant acquitted of murder by reason of insanity is not denied due process of law by commitment to a hospital for the insane without a further hearing on the issue of his continuing insanity, provided there are available means of securing his release thereafter upon a showing of recovered sanity (U. S. Const. am. 14; Mich. Const. 1908, art. 2, § 16; Act No. 175, chap. 6, §§ 15a–15d, Pub. Acts 1927, as added by Act No. 259, Pub. Acts 1939).

3. CRIMINAL LAW—MURDER—INSANE PERSONS—COMMITMENT—SUB-
SEQUENT PROCEDURE.

Amendment of code of criminal procedure requiring commitment
of a person acquitted of the crime of murder by reason of in-
sanity, without a further hearing on the question of his
sanity, is not invalid as long as there is some available method
or procedure by which person committed can later have ques-
tion of sanity investigated and judicially determined (Act
No. 175, chap. 6, §§ 15a–15d, Pub. Acts 1927, as added by
Act No. 259, Pub. Acts 1939).

4. SAME—INSANE PERSONS—COMMITMENT—DISCHARGE—HABEAS
CORPUS.

Fact that statute required that person acquitted of murder by
reason of insanity be committed without further hearing on
the question of his sanity also provided for discharge by
governor upon recommendation of the State hospital commis-
sion based upon an investigation by it and its determination
that such discharge would not be harmful to other persons
or their property did not preclude inmate's securing an in-
vestigation and determination of his sanity through habeas
corpus proceedings and, if adjudged sane, being discharged
(Const. 1908, art. 2, § 11; 3 Comp. Laws 1929, § 15206;
Act No. 175, chap. 6, § 15c, Pub. Acts 1927, as added by
Act No. 259, Pub. Acts 1939).

5. CONSTITUTIONAL LAW—HABEAS CORPUS—INSANE PERSONS—STAT-
UTES—DUE PROCESS.

The fact that an inmate of a hospital for the criminally insane
has been committed to such institution pursuant to mandatory
provisions of statute upon his acquittal of charge of murder
on ground of insanity is provided in such statute with one
means of having the question of his sanity determined sub-
sequently therein through exercise of discretion by State
hospital commission does not deprive him of his right to the
writ of habeas corpus nor was the statute invalid as delegating
judicial powers or denying him due process of law since pro-
vision for discharge by discretionary acts of State hospital
commission is not the exclusive remedy available to him
(Const. 1908, art. 2, § 11; 3 Comp. Laws 1929, § 15206; Act
No. 175, chap. 6, §§ 15a–15d, Pub. Acts 1927, as added by
Act No. 259, Pub. Acts 1939).

6. STATUTES—TITLE OF ACT—CONSTITUTIONAL LAW—PREVENTION OF
CRIME—CODE OF CRIMINAL PROCEDURE.

Title of code of criminal procedure stating in part that it was
"to provide for procedure governing proceedings to prevent

crime" was broad enough to cover provision added thereto
by an amendatory act for mandatory commitment of person
acquitted of charge of murder on ground of insanity without
a further hearing (Const. 1908, art. 5, § 21; Act No. 175,
chap. 6, §§ 15a–15d, Pub. Acts 1927, as added by Act
No. 259, Pub. Acts 1939).

7. CRIMINAL LAW—INSANE PERSONS—MURDER—ACQUITTAL—QUES-
TIONING OF JURY.

In prosecution of defendant for murder wherein he admitted
commission of the homicide and relied upon defense of in-
sanity at the time of the offense it was not reversible error
upon part of trial court in making inquiry of jury when it
brought in verdict of acquittal to ascertain whether or not
jury thereby found defendant to be insane (Act No. 175,
chap. 6, §§ 15a–15d, Pub. Acts 1927, as added by Act No.
259, Pub. Acts 1939).

Appeal from Kalamazoo; Weimer (George V.), J.
Submitted October 16, 1942.    (Docket No. 112,
Calendar No. 42,004.)    Decided February 23, 1943.
Certiorari denied by Supreme Court of the United
States June 7, 1943.

Michael Dubina was committed to Ionia State
Hospital for Criminal Insane upon being found not
guilty of murder because of insanity.    Affirmed.

*James B. Stanley,* for appellant.

*Herbert J. Rushton,* Attorney General, and *Ray-
mond W. Fox,* Prosecuting Attorney, for the people.

STARR, J.    Defendant, appeals from an order en-
tered by the circuit court for Kalamazoo county
November 29, 1941, committing him to the Ionia
State hospital for the criminally insane for the re-
mainder of his natural life.

This case involves the constitutionality of Act
No. 175, chap. 6, §§ 15a, 15b, 15c, and 15d, Pub. Acts
1927, as added by Act No. 259, Pub. Acts 1939
(Comp. Laws Supp. 1940, §§ 17207–1—17207–4, Stat.

Ann. 1942 Cum. Supp. § 28.933 [1–4]), which provides as follows:

"SEC. 15a. Whenever any person charged with murder under the laws of this State, has been bound over to the court having jurisdiction of such criminal case, and the return is filed with the clerk of such court, the clerk shall forthwith notify the State hospital commission of that fact and such commission as soon as possible thereafter, shall cause such person to be examined for the purpose of determining his mental condition and the existence of any mental disease or defect which would affect his criminal responsibility. The commission shall designate 3 psychiatrists, as herein defined, for the purpose of making such examination. The report of such psychiatrists shall be transmitted by the commission to the clerk of said court and shall be accessible to the court the probation officer thereof, the attorney general, prosecuting attorney and the attorney for such person. For making such examination each psychiatrist shall receive mileage at the rate of 10 cents per mile, and each psychiatrist who is not in the employ of the State shall also receive such fee as the trial court shall determine.

"SEC. 15b. Any clerk of a court, or deputy clerk, who wilfully neglects to perform any duty imposed upon him by the preceding section shall be guilty of a misdemeanor and subject to imprisonment for not to exceed 90 days and a fine of not to exceed $100, or both such fine and imprisonment in the discretion of the court.

"SEC. 15c. Any person, who is tried for the crime of murder and is acquitted by the court or jury by reason of insanity, shall forthwith be committed by order of said court to a State hospital for the criminally insane for the remainder of his natural life. The governor *may*, however, discharge such person upon recommendation of the commission,

based upon an investigation by it and its determination that such discharge will not be harmful to other persons or their property.

"Sec. 15d. A psychiatrist under the meaning of the foregoing sections is a physician, duly licensed to practice in the State of Michigan, who has had at least 5 years' experience in actual practice, including either (a) 3 years' full time practice since January 1, 1935, in the care and treatment of persons suffering from nervous or mental disease or mental defect, in an institution provided for the care of such persons, or (b) has devoted 5 years prior to the case in which his services are requested, to a practice confined wholly or substantially to the diagnosis, care or treatment of persons suffering from nervous and mental disease or mental defect."

Defendant was arrested in October, 1941, and bound over to circuit court for trial. An information was filed charging him with the crime of murder. In pursuance of Act No. 175, chap. 6, § 15a, Pub. Acts 1927, as added by Act No. 259, Pub. Acts 1939, above quoted, the State hospital commission designated a sanity commission of three psychiatrists who examined defendant. The sanity commission stated in their report, which was signed by all members and filed with the county clerk, that, in their opinion, defendant was sane at the time he committed the crime. Such report further stated that the commission believed defendant "is sane today and capable of understanding the nature and object of the legal proceedings against him."

When subsequently arraigned in circuit court, defendant stood mute, and the court entered a plea of not guilty. Defendant gave written notice of a plea of temporary insanity existing at the time of the alleged crime. During his trial by jury defendant took the stand in his own behalf and admitted

facts which would have justified the jury in finding him guilty of the crime of murder if he was sane, or not guilty if insane. Four psychiatrists called by the prosecution testified that, in their opinions, defendant was sane when he committed the alleged crime. Three psychiatrists called by defendant testified that, in their opinions, defendant was insane at the time of the alleged crime.

At the conclusion of all proofs the court charged the jury, among other things, "that the testimony of the people's witnesses and the respondent's own admissions made him guilty of murder unless they found that he was insane at the time of the homocide." The jury returned a verdict of not guilty on the "ground of insanity." Defendant was then remanded to the custody of the sheriff, and the following day, November 29, 1941, in pursuance of Act No. 175, chap. 6, § 15c, Pub. Acts 1927, as added by Act No. 259, Pub. Acts 1939, above quoted, the trial court entered an order committing him to the Ionia State hospital for the criminally insane "for the remainder of his natural life * * * or until his discharge therefrom as provided by law."

On December 12, 1941, defendant filed motion requesting the trial court to reconsider and vacate its order committing him to the Ionia State hospital and to discharge and release him from such institution. Such motion was based on defendant's contention that the statute under which he was committed (Act No. 175, chap. 6, §§ 15a–15d, Pub. Acts 1927, as added by Act No. 259, Pub. Acts 1939), above quoted, is unconstitutional for the reasons: (1) that it denies him due process of law (Michigan Const. 1908, art. 2, § 16; U. S. Const. am. 14); (2) that it deprives him of the right to writ of habeas corpus (Michigan Const. 1908, art. 2, § 11; 3 Comp. Laws 1929, § 15206 [Stat. Ann. § 27.2250]);

(3) that the subject matter of the statute is broader than its title (Michigan Const. 1908, art. 5, § 21); (4) that the statute is not enforceable; and (5) that it delegates judicial powers (Michigan Const. 1908, art. 7, § 1). Defendant also contended that the court erred in making inquiry of the jury as to the basis of their verdict.

In considering the constitutionality of the statute in question we recognize the established rule of statutory construction as stated by Mr. Justice BUTZEL in *Sullivan* v. *Michigan State Board of Dentistry,* 268 Mich. 427:

"Even if the law could be construed in two ways, one consistent with the constitutionality, and the other inconsistent therewith, the former will be considered as the one presumptively intended by the legislature. *Motz* v. *City of Detroit,* 18 Mich. 495; *Grand Rapids Booming Co.* v. *Jarvis,* 30 Mich. 308; *Attorney General* v. *Railway,* 210 Mich. 227."

In *Cady* v. *City of Detroit,* 289 Mich. 499, we said, p. 505:

"A statute will be presumed to be constitutional by the courts unless the contrary clearly appears; and in case of doubt every possible presumption not clearly inconsistent with the language and the subject matter is to be made in favor of the constitutionality of legislation. * * * Every reasonable presumption or intendment must be indulged in favor of the validity of an act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution that a court will refuse to sustain its validity."

See, also, *Bowerman* v. *Sheehan,* 242 Mich. 95 (61 A. L. R. 859); *People* v. *Zerillo,* 219 Mich. 635 (24 A. L. R. 1115); *Attorney General, ex rel. Barbour,*

v. *Lindsay*, 178 Mich. 524; *Albert* v. *Gibson*, 141 Mich. 698.

In attacking the constitutionality of the 1939 act defendant relies upon the case of *Underwood* v. *People*, 32 Mich. 1 (20 Am. Rep. 633), in which Act No. 168, Pub. Acts 1873, was held unconstitutional. Section 2 of such act provided:

"Any person acquitted of either of the crimes mentioned in the first section of this act by reason of such insanity and finding of the jury as mentioned and referred to in said section, shall be committed to the insane hospital connected with the State prison, and *shall only be released* therefrom on the certificate of the medical superintendent of the insane asylum at Kalamazoo, and the circuit judge of the circuit from which such person was sent to said hospital, setting forth that said person has so far recovered from the alleged insanity as to be safe to go at large. On filing such certificate with the governor, it shall be his duty to at once order the release of such person from confinement."

In the *Underwood Case* we held the 1873 act unconstitutional because it required commitment of the person acquitted of crime by reason of insanity without legal investigation as to his mental condition at the time of commitment, and because it excluded the confined person from afterward securing any investigation and judicial determination regarding his sanity. Under the 1939 act in question the trial court has no alternative but to commit a defendant acquitted by reason of insanity to the Ionia State hospital for the remainder of his natural life. Except as the issue of insanity is determined upon trial for the crime of murder, the act does not provide for a determination of the question of continued and existing insanity prior to commitment. However, it has generally been held that a

defendant acquitted by reason of insanity is not denied due process of law by commitment to a hospital for the insane without a further hearing on the issue of his continuing insanity, provided there are available means of thereafter securing his release upon a showing of recovered sanity. *People, ex rel. Peabody,* v. *Chanler,* 133 App. Div. 159 (117 N. Y. Supp. 322, affirmed 196 N. Y. 525, 89 N. E. 1109, 25 L. R. A. [N. S.] 946); *In re Slayback,* 209 Cal. 480 (288 Pac. 769); *In re Brown,* 39 Wash. 160 (81 Pac. 552, 1 L. R. A. [N. S.] 540, 4 Ann. Cas. 488, 109 Am. St. Rep. 868); *State* v. *Saffron,* 146 Wash. 202 (262 Pac. 970).

The statute considered in *Re Clark,* 86 Kan. 539 (121 Pac. 492, 39 L. R. A. [N. S.] 680, Ann. Cas. 1913 C, 317), made it mandatory that the court commit a defendant acquitted of crime by reason of insanity. After reviewing decisions from other jurisdictions the court said (p. 546):

"The grounds upon which the statute was held valid suggested in these opinions may be summarized briefly thus: (1) that insanity of a nature dangerous to others, proved on the trial, was presumed to continue to the time of the commitment; (2) that the commitment was based on evidence showing the continuance of such insane condition; and (3) that the commitment resulting from the express command of the statute, the trial and verdict upon the criminal charge was only an equivalent of proceedings provided to determine the question of insanity in cases not involving a charge of crime.

"Doubtless there is merit in each of these views, and each should have weight in upholding a statute, which is not to be set aside unless clearly unconstitutional. If the legislature in framing the law sought to give practical effect to the ordinary presumption referred to which so well accords with ordinary observation and experience, no good rea-

son is perceived why it could not do so, leaving a reasonable opportunity for a future determination of the question whether and when the detention should cease."

In the present case defendant had been acquitted of the crime of murder on the ground of insanity, and his immediate release might reasonably have been considered dangerous to the public peace and safety. Until the danger of a similar occurrence or of other crime was well past, it was not unreasonable or arbitrary to confine him in the Ionia State hospital for the criminally insane.

We conclude that the provision of the 1939 act mandatorily requiring commitment of a person acquitted of the crime of murder by reason of insanity, without a further hearing on the question of his sanity, does not invalidate the act, provided there is some available method or procedure by which the person committed can later have the question of his sanity investigated and judicially determined.

The next question is whether or not section 15c of the 1939 act deprived defendant of the opportunity and right, at any time subsequent to commitment, of obtaining his release through investigation and judicial determination as to his sanity. The only provision in the 1939 act for defendant's discharge subsequent to commitment is the authority given the governor to act at his discretion upon recommendation of the State hospital commission. However, such act does not provide that the procedure for release through the discretionary acts of the State hospital commission and governor is the *only* method by which the committed person can obtain his release. In other words, the act does not restrict or limit the committed person to such procedure and does not exclude his right, after

commitment, to obtain his discharge through investigation and judicial determination of sanity in habeas corpus proceedings. Therefore, we conclude that at any time after his commitment to the Ionia State hospital defendant could secure an investigation and determination of his sanity through habeas corpus proceedings and, if adjudged sane, could secure his discharge (Michigan Const. 1908, art. 2, § 11).

Section 15206, 3 Comp. Laws 1929 (Stat. Ann. § 27.2250), provides:

"Every person committed, detained, confined or restrained of his liberty within this State, for any criminal or supposed criminal matter, or under any pretense whatsoever, except in the cases in the next section specified, may prosecute a writ of habeas corpus or of certiorari according to the provisions of this chapter, to inquire into the cause of such imprisonment or restraint."

In the case of *In re Dahrooge,* 215 Mich. 90, we held that the question of the sanity of a person confined in the Ionia State hospital could be determined in habeas corpus proceedings. Our decision in that case was based upon Act No. 217, Pub. Acts 1903 (1 Comp. Laws 1915, § 1344), which provided, in part, that "anyone in custody as an insane person in any asylum, home or retreat, is entitled to a writ of habeas corpus under a proper petition to the circuit court." Such act of 1903 was repealed by Act No. 151, § 53, Pub. Acts 1923 (2 Comp. Laws 1929, § 6930 [Stat. Ann. § 14.852]). In that case we recognized the right of a person confined in the Ionia State hospital to have the question of his sanity determined in habeas corpus proceedings. In the present case the constitutional and statutory provisions hereinbefore cited give defendant, after his commit-

ment, the same right to have the question of his sanity determined in habeas corpus proceedings as was given by the statute involved in the *Dahrooge Case. Wright* v. *Wright*, 78 W. Va. 57 (88 S. E. 606); *Barry* v. *White*, 62 App. D. C. 69 (64 Fed. [2d] 707); *Swager* v. *Gillham*, 278 Ill. 295 (116 N. E. 71); *State, ex rel. Martin*, v. *Superior Court for King County*, 101 Wash. 81 (172 Pac. 257, 4 A. L. R. 572). The 1939 act in question did not deprive defendant of his right to the writ of habeas corpus and did not deny him due process of law.

Defendant's further contention that the act in question is invalid as delegating judicial powers is based upon the premise that the only remedy available to defendant is the provision for his discharge by discretionary acts of the State hospital commission and governor. His contention fails in view of our conclusion that such provision for discharge is not the exclusive remedy.

Defendant next contends that the act in question, which is added to Act No. 175, Pub. Acts 1927, code of criminal procedure (3 Comp. Laws 1929, § 17116 *et seq.* [Stat. Ann. § 28.841 *et seq.*]), is unconstitutional because the subject matter is broader than the title to said Act No. 175.* The title of the code of criminal procedure provides, in part:

"An act * * * to define the jurisdiction, powers, and duties of courts and of the judges and other officers thereof under the provisions of this act; * * * to provide for procedure governing proceedings to prevent crime."

The 1939 statute, providing for the commitment of a person acquitted of the crime of murder by reason of insanity, is not a criminal statute in the sense of involving punishment for the doing of an act.

---

* See Const. 1908, art. 2, § 21.—Reporter.

The statute clearly provides for a procedure intended to prevent crime and is expressly included within the title to the code of criminal procedure. The case of *People* v. *Frontczak*, 286 Mich. 51, cited by defendant, does not sustain his contention.

Defendant alleges that the trial court erred in making inquiry of the jury as to the basis of their verdict. It appears that at the time the jury returned the verdict of not guilty, the trial court inquired, "Is your verdict on the ground of insanity?" and, "By your verdict you find that he was insane?" To both questions the jurors replied, "Yes, sir." In view of defendant's testimony admitting the facts of the alleged crime and his reliance solely upon the defense of insanity, the trial court's inquiry of the jurors and their response merely confirmed the obvious inference that their verdict of not guilty was by reason of defendant's insanity. *Hodison* v. *Rogers*, 137 Kan. 950 (22 Pac. [2d] 491, 88 A. L. R. 1080). We are satisfied that the trial court did not commit reversible error in making the above-mentioned inquiries of the jurors. Other contentions by defendant do not require consideration.

The order of the trial court, committing defendant to the Ionia State hospital for the criminally insane, is affirmed.

BOYLES, C. J., and CHANDLER, NORTH, WIEST. BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.