**STATE of Iowa, Appellee,**

v.

**William ALLAN, Appellant.**

**No. 53060.**

Supreme Court of Iowa.

April 8, 1969.

D. W. Harris, Bloomfield, for appellant.

Richard C. Turner, Atty. Gen., David A. Elderkin, Asst. Atty. Gen., and Samuel O. Erhardt, County Atty., for appellee.

GARFIELD, Chief Justice.

Defendant Allan, who was acquitted on the ground of insanity of the crime of assault with intent to murder in violation of section 690.6 Code 1966, has appealed from an order of the district court, pursuant to Code section 785.19, finding his discharge would be dangerous to the public peace and safety and committing him to the State Mental Health Institute at Mt. Pleasant until such time as its superintendent determines defendant is no longer so dangerous and is sane.

Section 785.19 at all times pertinent here provided: "Acquittal on ground of insanity—commitment. If the defense is insanity of the defendant, the jury must be instructed, if it acquits him on that ground, to state that fact in its verdict. The court may thereupon, if the defendant is in custody, and his discharge is found to be dangerous to the public peace and safety, order him committed to the insane hospital, or retained in custody, until he becomes sane."

It is not questioned that defense to the criminal charge was insanity, the jury was instructed as the statute directs and its verdict stated acquittal was on the ground of insanity.

The verdict of acquittal was returned January 31, 1968. On February 2 the county attorney applied to the court for a hearing under 785.19 as to whether defendant's discharge would be dangerous to the public peace and safety and he should be committed to "the insane hospital," to use the statutory language. The application was granted, the hearing held February 15 and the order appealed from was made February 23.

Essentially four errors are assigned. (1) Section 785.19 is not applicable here because defendant was not "in custody" of the sheriff but was on bail when the verdict of acquittal was returned. (2) The finding defendant is dangerous to the public peace and safety is not supported by the evidence but is contrary thereto. (3) The order is illegal in committing defendant to the Mt. Pleasant institution until he is found "sane." (4) Section 785.19 and the court order violate Article I, sections 9 and 10 Iowa Constitution by depriving defendant of a jury trial.

We affirm the order.

I. The state moved to dismiss the appeal on the ground no appeal lies from the order of February 23 since it is not "the final judgment" within the meaning of Code section 793.2 which provides "An appeal can only be taken from the final judgment * * *." The motion was ordered submitted with the appeal and should be first considered. As affirmance of the order indicates, we hold the motion should be overruled.

Hansen v. Haugh, 260 Iowa 236, 149 N.W.2d 169, involves an order pursuant to section 785.19 which for present purposes was the same as the one here. Although the commitment there was to the "Security Hospital" within the outer walls of the men's reformatory, we held it was to "the insane hospital" within the meaning of 785.19. Both the trial court and this court also held Hansen's commitment was a civil commitment, not a criminal one, of a mentally ill person, and in no sense by way of punishment for any act done but to protect the public and defendant and

provide treatment of his unfortunate malady. The Hansen opinion also points out enactment of 785.19 and a court order thereunder are an exercise of the state's police power. See also 44 C.J.S. Insane Persons § 131 a, page 288.

Section 793.2 is in the Code chapter which refers to appeals in a criminal case. We may assume, as the state contends, the order appealed from is not the final judgment or sentence in a criminal case within the meaning of 793.2. If it is not and if, as Hansen v. Haugh supra holds, the order is a civil commitment in the exercise of the state's police power, it is a final judgment or decision for the purpose of appeal within the meaning of rule 331 Rules of Civil Procedure.

▆▆▆ Both the Supreme Court of the United States and this court have held that in both civil and criminal cases the judgment is final for purposes of appeal when it terminates the litigation between the parties on the merits and leaves nothing to be done but to enforce by execution what has been determined. State v. Klinger, 259 Iowa 381, 383, 144 N.W.2d 150, 151, and citations. This order (the vital part of which is designated "Judgment Entry") falls within the above language. See also Morgan v. State, 179 Ind. 300, 101 N.E. 6, 9–10.

II. Considering now the assigned errors set out supra section 785.19 states the order of commitment may be made if "the defendant is in custody, and his discharge is found to be dangerous to the public peace and safety, * * *." It is true, as defendant asserts, he was not in actual physical custody of the sheriff but was on bail, to which he had been admitted prior to the trial, when the verdict of acquittal was returned. However, we think the statute does not require more than the constructive custody of one admitted to bail. Ample authority supports this view.

8 Am.Jur.2d Bail and Recognizance, section 4, contains this: "The primary pur-poses of bail in a criminal case are to relieve the accused of imprisonment, to relieve the state of the burden of keeping him, pending the trial, and at the same time to keep the accused constructively in the custody of the court, whether before or after conviction, to assure that he will submit to the jurisdiction of the court and be in attendance thereon whenever his presence is required. * * *

"An accused person released on bail is not only in the custody of bail, but he is also in custody of the law; the accused is deemed to be as much under the power of the court as if he were in custody of the proper officer."

And id., section 94, page 837 states: "Although a defendant in a criminal action is not in custody in the sense of being under physical restraint when released on bail bond, he is still, constructively, in the custody of the law as a continuance of the original imprisonment."

▆▆▆ 8 C.J.S. Bail § 31, page 60 (1962 Vol.), contains this: "One enlarged on bail is, however, also considered as being in the custody of the law and the bail does not divest the court of its inherent power to deal with the person of the accused." A footnote cites several precedents from different jurisdictions to support the quoted text and the proposition that the principal under bail bond or recognizance "is still, constructively, in custody of the law, * * *."

Decisions which support the views above expressed and our holding on defendant's first assigned error include Brewer v. Municipal Court, etc., Cal.App., 193 Cal. App.2d 510, 14 Cal.Rptr. 391, 395; State v. Bates, 140 Conn. 326, 99 A.2d 133, 134–135; Matera v. Buchanan, Fla.App., 192 So.2d 18, 20; In re Lexington Surety & Indemnity Co., 272 N.Y. 210, 5 N.E.2d 204 and citations; Lemme v. Langlois, R.I., 244 A.2d 271, 273; State v. Olson, S.Dak., 152 N.W.2d 176, 177–178. See also Taylor v. Taintor, 83 U.S. (16 Wall.) 366, 371, 21 L.Ed. 287, 290.

**756**

Lemme v. Langlois, supra, says of an accused admitted to bail, "The great weight of authority * * * supports the view that such person is in custody of the bail and, constructively at least, in the custody of the law."

■ No sufficient reason is suggested or occurs to us why section 785.19 or a court order thereunder should not apply, other requisite conditions being shown, to one acquitted on the ground of insanity who is in constuctive—as well as to one in actual physical—custody. Indeed it would seem there is greater need for application of the statute and an order thereunder where accused is merely in constructive custody of the law.

Defendant cites Allen v. United States, 1 Cir., N.H., 349 F.2d 362, and United States v. Harris, S.D.Cal., 155 F.Supp. 17, for the point the court has no authority to proceed under 785.19 "where defendant is out on bond and not in custody." We do not consider either case contrary to our holding on this assigned error.

Allen, while at large on bail pending commencement of service of a federal sentence, proceeded under U.S.C., section 2255, to obtain post conviction relief somewhat similar to that by habeas corpus, which is available to one "in custody" under sentence. Relief was denied on the ground service of the sentence had not commenced and he was not in custody thereunder. It is sufficient to say United States v. Harris, supra, is a somewhat similar decision.

III. Defendant combines in one division of his brief and argument four assigned errors all challenging sufficiency of the evidence at the hearing on February 15 to support the finding his discharge would be dangerous to the public peace and safety. We follow the same plan in this division hereof.

At the hearing the entire file in the criminal case was received in evidence without objection on the state's offer. The state then rested, evidently relying on a claimed presumption that a condition of insanity once established is presumed to continue until the contrary is shown. The file has been certified to us.

Defendant then offered testimony of two psychiatrists, Dr. Lara of the State Psychopathic Hospital at Iowa City, and Dr. Paul Cash of Des Moines. Both expressed the opinion on direct examination defendant was not on that day dangerous to the public peace and safety. Dr. Lara had seen defendant for a period of 25 days commencing November 28, 1967 at the Psychopathic Hospital at Iowa City pursuant to a court order on application by the county attorney approved by defendant's counsel. He had also talked to defendant 10 minutes the morning of the hearing and his opinion, above referred to, was based on that interview.

On cross-examination Dr. Lara admitted a 10-minute interview is not sufficient basis for such an opinion; that if one's mental illness became so pronounced on one occasion to lead to violence it could reoccur in violent fashion; the likelihood of recurrence in defendant was 20 percent.

Defendant was a patient of Dr. Cash in the mental ward of Iowa Lutheran Hospital in Des Moines from August 28 to October 15, 1967. (The crime was committed August 19.) On cross-examination Dr. Cash said when defendant entered the hospital he was suffering from manic depressive reaction, depressed type; such illness comes on over a period of at least two years before it is apparent to another the subject is having trouble; at times the illness appears to come on within a few days; the witness knew this condition in defendant started as early as 1939 when he was hospitalized in the state mental hospital at Mt. Pleasant several months; the hospital record showed defendant had acted suspicious toward others as much as six years before his

commitment; he thought the symptoms in 1933 and 1939 were either from the same illness or a recurrence of it; the 1967 illness was also a recurrence of the same type illness; from the fact defendant suffered from manic depression in 1939 and again in 1967 there is a 20 percent chance of recurrence; defendant was "on medication" at the time of the hearing and should be seen by a psychiatrist regularly for two years.

The file received in evidence without objection shows defendant was indicted September 5, 1967; defendant swung an iron bar against the head of a neighbor lady who was lying on the ground until his wife heard screams and came to the scene; victim suffered severe lacerations about the head and a fractured skull; on September 15 defendant filed a motion for continuance for arraignment sworn to by his attorney from personal knowledge of the facts; the motion states in part defendant has a history of mental illness over a period of years, was hospitalized at the Mental Health Institute at Mt. Pleasant in 1939 and has had psychiatric care periodically since then. The record shows defendant was discharged from Mt. Pleasant as not cured while on parole in 1940.

In presenting the above motion to the court counsel stated it appeared defendant was mentally deranged; defendant's wife informed him she knew of his mental illness when they were married late in life; some of the neighbors informed counsel they felt it was dangerous for defendant to be in the community and were scared; Dr. Cash told counsel defendant should be hospitalized immediately; he was then in the mental ward at the hospital in Des Moines and did not respond to medication in any way and to only some shock treatment; defendant's wife has not been allowed to see him at the hospital. The court continued arraignment until defendant was released from the hospital.

On November 2, 1967, defendant moved for continuance of his trial on the ground it was then impossible for him to understand the nature of the charge against him and Dr. Cash stated he should have about two months from the time of his discharge from Lutheran Hospital on October 15, to recover from the effects of his hospitalization and treatment. Trial did not commence until January 29. In the meantime defendant was confined 25 days in the hospital at Iowa City as above related.

The court's finding as a fact defendant was then dangerous to the public peace and safety was based on his long history of mental illness, the nature of his act on August 19, the jury verdict and inferences therefrom, the lack of assurance from defendant's expert witnesses that his mental illness could not recur within a very short time in the form of violence to himself or others, the chance of such recurrence is too large to gamble defendant and the public safety further. The court also noted that while Dr. Cash testified defendant should have regular psychiatric treatment for two years he was not then under legal compulsion to continue such treatment.

Defendant thinks the court's finding is based in part on evidence at the trial of the criminal charge, not on that at the hearing which preceded the order. We believe defendant is mistaken in this. The order observes the court had the power to base its finding on evidence at the criminal trial but held a hearing for the benefit of all and only the evidence at the hearing was considered as a basis for the judgment entry. Nothing in the record on which the appeal has been submitted calls for a contrary conclusion.

Since a hearing was held here we have no occasion to decide whether such an order could be based on the evidence at the criminal trial. It may be noted, how-

ever, there is authority for the view expressed by the trial court under a statute virtually identical to section 785.19. State ex rel. Barnes v. Behan, 80 S.D. 370, 124 N.W.2d 179, 180–181. See also People v. Dubina, 304 Mich. 363, 8 N.W.2d 99, 102, 145 A.L.R. 886, 890, and Anno. 892; Hodison v. Rogers, 137 Kan. 950, 22 P.2d 491, 88 A.L.R. 1080, and Anno. 1084.

Defendant's brief point that such an order must be based on substantial evidence may be conceded. It is not suggested our review of the evidence is de novo. The hearing was conducted, without objection, as at law and the printed record and defendant's brief are so designated. See in this connection Gahwiller v. Gahwiller, 237 Iowa 1291, 1299, 25 N.W.2d 485, 488.

There can be little doubt it was presumed from the file received in evidence at the hearing defendant was then insane. He had been found insane in 1939 by what was then called the commission of insanity, now the commission of hospitalization, committed to what is now called the State Mental Health Institute at Mt. Pleasant where he was a patient until 1940 when he was discharged as not cured. He had never been discharged as cured. In addition, as stated, his acquittal of the crime charged was on the ground of insanity in accordance with his plea.

■ It has long been the rule in this state that when insanity is once established it will be presumed to continue until the contrary is shown, and the burden to so show is then cast upon the one who asserts a return to sanity. In re Knox's Will, 123 Iowa 24, 31, 98 N.W. 468; citations in opinion of Justice Bliss in State v. Bruntlett, 240 Iowa 338, 372, 36 N.W.2d 450, 468; Zellmer v. Catlin, 253 Iowa 1080, 1083, 114 N.W.2d 925, 926.

29 Am.Jur.2d, Evidence, section 243, page 290 states: "Where a person has been adjudged to be insane, or where one has been acquitted of crime on the ground of insanity, the insanity is presumed to continue until overcome by evidence to the contrary."

As these authorities indicate, the presumption of continued insanity is not conclusive, is one of fact and may be overcome by evidence. We have not previously considered the degree of proof required to rebut such presumption at a hearing held under section 785.19. Defendant asserts the proof need be by only a preponderance of the evidence, citing Madsen v. Obermann, 237 Iowa 461, 472, 22 N.W. 2d 350, 357, a habeas corpus action by one previously committed to a state mental health institute.

However, the Madsen opinion points out that "the likelihood of danger to the public peace or safety from the discharge of one claiming recovery of sanity is an element to be considered in every case having an appropriate factual background * * *. This court has considered such element in the case of a person * * * whose conduct had been violent and dangerous, and also * * * of another who had been charged with a dangerous crime and had been committed under Chapter 648." (citations) Chapter 648 Code 1939 is now chapter 783 Code 1966.

Nothing in Madsen v. Obermann is contrary to this from State ex rel. Barnes v. Behan, supra, 80 S.D. 370, 124 N.W.2d 179, 181, an action in habeas corpus by one committed to a hospital for insane under a statute almost identical to 785.19: "A person found not guilty by reason of insanity of a crime of violence and committed to a hospital for the insane should not be released as sane if there is a reasonable probability that by reason of mental disease or unsoundness of mind he is a danger to himself, to his own safety, or a menace to the safety, person or property of other people." (citations) See also Newton v. Brooks, Ore., 426 P.2d 446.

The Behan opinion also properly points out "The fact petitioner was tried for his

criminal acts was no indication he was sane for the reason an insane person may be tried if he is competent to understand the proceeding and conduct his defense in a rational manner." The question is considered in more detail in cases cited in the opinion.

■ So the fact this defendant stood trial for the crime charged does not in itself rebut the presumption of continued insanity. It may be fairly inferred that Dr. Cash's treatment of defendant between August 28 and October 15, 1967 and that in the Psychopathic Hospital at Iowa City for 25 days in November and December were primarily for the purpose of determining and improving his competency to stand trial.

■ The test of insanity as a defense to the crime which the court submitted to the jury was whether the act was caused by mental disease or unsoundness which destroyed defendant's power rationally to comprehend the nature and consequences of the act and to know it was wrongful—in substance the "right and wrong" test established in the McNaghten Case, 8 English Reprint 718, which prevails in this state. State v. Harkness, Iowa, 160 N.W. 2d 324; State v. Arthur, Iowa, 160 N.W.2d 470.

■ Upon the considerations just stated defendant's contention his claimed discharge from the hospital at Iowa City constituted conclusive proof he was restored to mental health is without merit. In further support of this conclusion see Hurt v. United States, 8 Cir. N.D., 327 F.2d 978, 981; Swisher v. United States, 8 Cir. Mo., 326 F.2d 97; Winn v. United States, 106 App.D.C. 133, 270 F.2d 326. The Swisher opinion states: " * * * the issue of 'mental competency *at the time of the offense* and *at the time of trial* are entirely different questions of fact' * * *."

Further, defendant was not discharged from the hospital at Iowa City as cured. He was sent there under a court order for a period not to exceed four weeks and was then to be released to his wife to whom he was delivered after 25 days. The letter to the county attorney at the time of his release stated in part defendant could cooperate *in his own defense and was then* essentially free from psychosis.

■ We must also disagree with defendant's argument it was established conclusively or as a matter of law that he was not dangerous to the public peace and safety and the court was bound to so find. The issue was essentially one of fact and we are not justified in interfering with the determination made.

IV. Defendant's assigned error that the order is illegal in committing him to the mental health institute until he is found "sane" is without merit.

■ It is admitted this provision of the order conforms to the language of section 785.19 Code 1966, quoted at the outset hereof. Basis for the claimed illegality is that the 62d General Assembly by chapter 199, section 21.3 amended the statute by striking the last three words "he becomes sane," and inserting in lieu thereof: "he demonstrates good mental health and is considered no longer dangerous to the public peace and safety or to himself." Defendant thinks the order should conform to the language last quoted rather than to that stricken by the amendment.

Considering solely how soon defendant may be released from Mt. Pleasant it would seem it would probably come sooner under the language of the order than that of the amendment. It is surely arguable that many persons who would be found sane could not demonstrate good mental health and defendant might be such a person. However this may be, the amendment did not apply to the order.

As stated at the end of chapter 199 of the Acts of the 62nd General Assembly, it was passed on or after July 1, 1967 and

was not approved by the Governor until July 25. The act contained no provision making it effective upon publication. Chapter 199 therefore did not take effect until July 1, 1968 as provided by Article III, section 26 Iowa Constitution as amended by the 60th and 61st General Assemblies and the voters in 1966. This is explained by the Code Editor on preliminary page iii of the Acts of the 62nd General Assembly and accords with an opinion of the state Attorney General of November 2, 1967.

As before stated, the order was made February 23, 1968 and all proceedings in the trial court were concluded long before July 1, 1968.

This from Butters v. City of Des Moines, 202 Iowa 30, 32–33, 209 N.W. 401, 402, is applicable here: "Until the time arrives when a law is to take effect and be in force, a statute which is passed by both houses of the Legislature and approved by the executive has no force whatever, for any purpose. Before that time, no rights may be acquired under it, * * *. The fixing of a date, either by the statute itself or by constitutional provision, when a statute shall be effective, is equivalent to a legislative declaration that the statute shall have no effect until the date designated."

To like effect is Porter v. Iowa State Board Public Instruction, 259 Iowa 571, 577, 144 N.W.2d 920, 924.

V. Defendant's final assigned error, that section 785.19 and the order appealed from violate Article I, sections 9 and 10, Iowa Constitution by depriving him of a jury trial also lacks merit. No decision has been cited which supports the assigned error. Hansen v. Haugh, supra, 260 Iowa 236, 149 N.W.2d 169, 173–175, holds to the contrary, both as to constitutionality of section 785.19 and an order thereunder committing petitioner to the "Security Hos-

pital," a department of the men's reformatory. See also Hiatt v. Soucek, 240 Iowa 300, 36 N.W.2d 432; In re Brewer, 224 Iowa 773, 276 N.W. 766.

It is generally held that a defendant acquitted of crime by reason of insanity is not denied due process by commitment to a hospital for the insane without a further hearing, if there are available means of thereafer securing his release upon a showing of recovered sanity. People v. Dubina, supra, 304 Mich. 363, 8 N.W.2d 99, 102, 145 A.L.R. 886, 890, and citations and Anno. 892, 893.

Newton v. Brooks, supra, Ore., 426 P.2d 446, 449, says of restraint under an order pursuant to a statute very similar to our 785.19, "So long as judicial review is available, restraint in such cases is generally upheld as constitutional. See cases collected in Annotation, 95 A.L.R.2d 54 (1964)."

See also State ex rel. Anderson v. U. S. Veterans Hospital, 268 Minn. 213, 128 N.W. 2d 710, 716–717, 44 C.J.S. Insane Persons § 131a, page 288; 41 Am.Jur.2d, Incompetent Persons, section 18, pages 557–559.

Code section 229.37 provides in part: "All persons confined as insane shall be entitled to the benefit of the writ of habeas corpus, and the question of insanity shall be decided at the hearing."

We have held this provision applies to all those confined in state supervised hospitals for the insane and the remedy there provided is analogous to an appeal to the district court. Hiatt v. Soucek, supra, 240 Iowa 300, 304–305, 36 N.W.2d 432, 435 and citations; Hansen v. Haugh, supra, 260 Iowa 236, 149 N.W.2d 169, 175.

Affirmed.

All Justices concur.