Michael A. JONES, Appellant,

v.

UNITED STATES, Appellee.

No. 11918.

District of Columbia Court of Appeals.

Argued April 16, 1979.

Decided Feb. 4, 1980.

Opinion Vacated on Grant of Rehearing En Banc April 22, 1980.

---

Silas J. Wasserstrom, Public Defender Service, Washington, D. C., appointed by the court, for appellant.

Cheryl M. Long, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Washington, D. C., at the time the brief was filed, John A. Terry, Oscar Altshuler, and Richard W. Goldman, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, MACK, and FERREN, Associate Judges.

FERREN, Associate Judge:

Michael A. Jones was found not guilty of petit larceny by reason of insanity. Thereafter, the court held a "release hearing" pursuant to D.C.Code 1973, § 24–301(d), and committed Jones indefinitely to St. Elizabeths Hospital. In our first opinion, reported at D.C.App., 396 A.2d 183 (1978), we rejected Jones' contention that he is entitled, as a matter of equal protection, to release from St. Elizabeths upon expiration of the maximum period for which he could have been imprisoned unless the government carries the burden of proving at a civil commitment hearing that he is still mentally ill and dangerous to self or others. *See* D.C.Code 1973, § 21–545(b). More specifically, assuming the validity of Jones' confinement after the "release hearing" (which is uncontested here), we held there is

> no constitutional requirement that appellant be released or civilly committed at the end of the maximum imprisonment period, for that period bears no relationship to the unchallenged basis for appellant's hospital confinement: that he is mentally ill, is dangerous to self or others, and should receive treatment until he is well enough for release. [*Jones, supra* at 184.]

After reconsideration, we vacate our first order. We conclude that an acquitee may not be confined for treatment pursuant to § 24–301(d) beyond the maximum period for which he or she could have been imprisoned for the underlying criminal charge. An acquitee is entitled to release at the end of that period unless the government obtains a civil commitment. Accordingly, because that maximum period of one year has expired here, appellant Jones shall be released unless civilly committed forthwith.

I.

Central to the analysis in our first opinion was the following legal premise, based on *Baxstrom v. Herold*, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966): if commitment to St. Elizabeths after a § 24–301(d)(2) "release hearing" is to survive an equal protection challenge, it may not be punitive in any respect.[1] In other words, the *commitment*

---

1. In *Baxstrom*, the Court held that a prisoner who was civilly committed as insane at the end of his prison term was denied equal protection by a statutory procedure which deprived him of a jury review accorded to other civil committees. Since *Baxstrom*, the Court has upheld other equal protection challenges by individuals who enter mental health facilities through

procedure must be wholly rehabilitative—wholly a process for finding someone mentally ill and dangerous to self or others. *Jones, supra* at 188 & n.7.[2] Consequently, we concluded that appellant's failure to challenge the § 24–301(d) "release hearing" procedure meant that

> appellant must be presumed to agree that this confinement is not based, *even in part*, on punitive considerations; otherwise, it would be unconstitutional under *Baxstrom, supra; see Humphrey v. Cady,* 405 U.S. 504, 510–11, 92 S.Ct. 1048, 1052–53, 31 L.Ed.2d 394 . . . (1972); *Waite v. Jacobs,* 154 U.S.App.D.C. 281, 285–86, 475 F.2d 392, 396–97 (1973) . . . Therefore, absent any explanation as to why the § 24–301(d) release hearing results in lesser quality findings of illness and dangerousness than a § 21–545(b) civil commitment hearing, we must conclude that the findings are legally the same. [*Jones, supra* at 189 (emphasis added).][3]

In his petition for rehearing, appellant questions our legal premise. He argues, in effect, that the § 24–301(d) "release hearing" procedure is to some extent punitive, as evidenced by the less-protective proce-

dures afforded acquitees than civil commitees; that *Baxstrom, supra*, does not necessarily make that procedure unconstitutional as a means for initially confining acquitees; but that the price of constitutionality is release or civil commitment at the end of the hypothetical maximum prison term, since that is the longest an acquitee can be confined for punitive reasons without a denial of equal protection of the laws.

Appellant derives his argument primarily from *United States v. Brown,* 155 U.S.App. D.C. 402, 407–08, 478 F.2d 606, 611–12 (1973), in which the United States Court of Appeals for the District of Columbia Circuit acknowledged—and upheld—a partially punitive underpinning to the former § 24–301(d) procedure. Specifically, the *Brown* court upheld an instruction, based on *Bolton v. Harris,* 130 U.S.App.D.C. 1, 395 F.2d 642 (1968), that the government had the burden at a "release hearing" of proving respondent mentally ill and dangerous by a preponderance of the evidence, and further held that this instruction would not violate equal protection even if the government, in a civil commitment proceeding, had the burden of proof beyond a reasonable doubt.[4]

the criminal process. *See Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972) (equal protection violated by state procedures which provide more lenient commitment standards and more stringent release standards for those criminal defendants found incompetent to stand trial than for those civilly committed); *Humphrey v. Cady,* 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972) (remand for evidentiary hearing on claim that protections afforded those civilly committed were not extended to those committed under sex crimes act).

2. Put still another way, if § 24–301(d) is constitutional, it must merely be another equally valid route to the same finding derived from the civil commitment process under D.C.Code 1973, § 21–545(b). *See Jones, supra* at 188 n.7.

3. We concluded, accordingly, that there was "no room for appellant's contention that his hospital confinement must cease (subject to civil commitment) at the end of the maximum term for which he could have been confined to prison. Although the confinement procedures differ for acquitees and commitees, the status of each group after confinement is the same: each has been found mentally ill and danger-

ous, and each, as a result, has been confined for the protection of self or society, as well as for treatment, not punishment. The termination of the maximum sentence period is thus irrelevant to the status of acquitees; that termination does not alter the similarity of situation between acquitees (after confinement) and commitees." [*Jones, supra* at 189 (footnote omitted).]

4. The *Brown* court, therefore, was dealing with the earlier § 24–301(d) procedure. In the present case we deal with the post-1970 scheme under which an acquitee has the burden of proving, by a preponderance of the evidence, that he has recovered his sanity. *See Jones, supra* at 185.

The recent case of *In re Nelson,* D.C.App., 408 A.2d 1233 (1979), indicated that the proper burden of proof in civil commitments should be "clear and convincing evidence" rather than proof "beyond a reasonable doubt" in light of *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). The level of the government's burden in civil commitment proceedings does not affect our analysis here, however, since the burden remains on the government.

The *Brown* majority justified this lesser burden of proof in the criminal commitment procedure in the following way:

> The difference between the classes [acquitees and commitees] for purposes of burden of proof, is in the extent of possibility and consequence of error. If there is error in a determination of mental illness that results in a civil commitment, a person may be deprived of liberty although he never posed any harm to society. If there is a similar error in confinement of an insanity-acquitted individual, there is not only the fact of harm already done, but the substantial prospect that the same error, ascribing the quality of mental disease to a less extreme deviance, resulted in a legal exculpation where there should have been legal responsibility for the antisocial action.

> The matter now being discussed is suffused with the broad consideration that modern standards of the insanity defense, not restricted to those who do not know right from wrong, call for the acquittal of persons who "may have meaningful elements of responsibility." And over and above the difficulty of situations where the issue of mental responsibility is doubtful, we cannot wholly ignore the danger of calculated abuse of the insanity defense, referred to in *Lynch v. Overholser* [, 369 U.S. 705, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962)]. [*Brown, supra,* 155 U.S.App.D.C. at 407, 478 F.2d at 611 (footnote omitted).]

Appellant points out that *Brown* went on to suggest, on the basis of *Baxstrom, supra,* that there is a *quid pro quo* for this weaker insanity commitment standard, namely, that an acquitee is constitutionally entitled as of the end of the maximum prison term to release or, at worst, to civil commitment:

The clear implications of the foregoing analysis, and *Baxstrom,* require, however, that when the individual has been in detention for a considerable period of time, his continued detention *vel non* should be governed by the same standard of burden of proof as applies to civil commitments. The extent of that period calls for sound discretion, would take into account *e. g.,* the nature of the crime (violent or not), nature of treatment given and response of the person, would generally not exceed five years, and should, of course, never exceed the maximum sentence for the offense, less mandatory release time. [*Brown, supra* at 408, 478 F.2d at 612 (footnote omitted).]

In summary, appellant argues that he had been led down the road by the United States Court of Appeals in *Brown, supra,* to a point beyond which he thought he would be taken seriously in a constitutional challenge to § 24–301(d).[5] That court had told him, in essence, not to bother challenging the release-hearing procedure but instead to assume that a partially-punitive commitment is valid under *Baxstrom, supra.* Thus, he asserted the right to release or civil commitment as of the end of the maximum prison term—at the point where society's right to any punitive gloss on confinement ends. Accordingly, he says, our first opinion in this case viewed his failure to attack § 24–301(d) incorrectly—and unfairly—by concluding that it could only have one meaning: tacit acceptance of a wholly rehabilitative underpinning to the commitment procedure, which justifies confinement beyond the maximum prison sentence.[6] We turn to this argument.

---

5. Appellant presumably would acknowledge, however, that *Brown, supra,* as a post-reorganization decision, is not binding on the court. *See M.A.P. v. Ryan,* D.C.App., 285 A.2d 310 (1971).

6. Our assumption that appellant's acceptance of § 24–301(d) necessarily implied his agreement that the process was wholly rehabilitative was based on our view that *Baxstrom, supra,* and *Humphrey v. Cady,* 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972), would constitu-

tionally preclude confining acquitees under procedures less protective than those accorded to commitees if such confinement were "based, even in part, on punitive considerations." *Jones, supra* at 189. Thus, if § 24–301(d) were valid *as a wholly rehabilitative procedure* and confinement, any difference from a civil commitment determination under § 21–545(b) could only be justified on evidentiary grounds; *i. e.,* in contrast with a civil commitment, "the 're-

## II.

In reconsidering appellant's assumption, solely for the sake of argument, that § 24–301(d) is valid, we must put the question in perspective by outlining the differences between the civil and criminal commitment schemes. Appellant, as an acquitee, carried the burden of proving his insanity at the time of the charged offense by a preponderance of the evidence. He had the right to a jury if he had wanted one. Upon a verdict of not guilty by reason of insanity, the District, like many states, permits continued confinement for a prescribed, relatively brief period of observation.[7] The courts have justified this confinement, which is not required in cases of civil commitment,[8] on at least two grounds. Some have stressed the continuing presumption of insanity once established by the acquitee—an evidentiary emphasis. *See, e. g., In re Franklin,* 7 Cal.3d 126, 136, 496 P.2d 465, 470, 101 Cal.Rptr. 553, 558 (1972) (en banc). Others have emphasized the dangerousness inherent in the offense excused by insanity, and the need for protection of the public while psychiatric observation takes place— arguably a punitive emphasis. *See, e. g., Chase v. Kearns,* 278 A.2d 132, 135 (Me. 1971) (en banc).

These same courts, moreover, commonly justify statutory confinement beyond the observation period if, after a review proceeding (akin to a § 24–301(d)(2) "release hearing"), the acquitee fails to sustain the burden of persuading the court that he or she has recovered. Their reasoning reflects an extension of the justification for the observation period. First, apropos of the evidentiary emphasis, the courts note that the acquitee has initiated and once sustained the burden of proving insanity, whereas the prospective civil committee has not yet so conclusively manifested mental illness and dangerousness. Thus, the presumption of an acquitee's insanity continues. Second, these courts conclude that, because the trier has found beyond a reasonable doubt that the acquitee has committed the charged offense (although he or she is not rationally or morally responsible for that act), it is not unreasonable for society, as a matter of self-protection, to demand that the acquitee receive treatment for mental illness. Such treatment can be justified for at least as long as the maximum possible prison term he or she would have received, unless the acquitee can carry the burden of demonstrating an earlier recovery. The courts accordingly perceive a situational difference between acquitees and committees constitutionally sufficient to justify keeping the burden of proof on the former but not the latter. *See Franklin, supra,* 7 Cal.3d at 138, 496 P.2d at 476, 101 Cal.Rptr. at 560 (acquitees are an "exceptional class"); *Chase, supra* at 138 (same).

After reviewing numerous cases, we conclude that the courts typically mix evidentiary and punitive rationales in justifying less comprehensive review of acquitees at "release hearings" than is afforded civil

lease hearing' procedure for an acquitee presumably can be somewhat abbreviated because of the predictive value of the initial determinations of insanity and dangerousness at the criminal trial." *Jones, supra* at 189. Because there is authority for such analysis, *see, e. g., In re Franklin,* 7 Cal.3d 126, 496 P.2d 465, 101 Cal.Rptr. 553 (1972) (en banc), we interpreted appellant's acceptance of his confinement under § 24–310(d) as acceptance of a purely evidentiary justification for the differences between the criminal and civil commitment procedures—a justification presuming equally valid findings of mental illness and dangerousness under §§ 21–545(b) and 24–301(d). *See Jones, supra* at 188 n.7.

**7.** In the District of Columbia, automatic confinement cannot exceed 50 days, D.C.Code 1973, § 24–301(d). In *Franklin, supra* at 143, 496 P.2d at 475, 101 Cal.Rptr. at 563, the court approved a 90-day period in California. The Model Penal Code allows six months, ALI Model Penal Code § 4.08 (Proposed Official Draft 1962).

**8.** For example, in the District of Columbia, persons may be detained at a public or private hospital for up to 48 hours for emergency observation and diagnosis upon application by an appropriate authority and certification by a psychiatrist. D.C.Code 1973, §§ 21–521, –522. A detained individual must be released after 48 hours, however, unless a court order is obtained. D.C.Code 1973, § 21–523. *Williams v. Meredith,* D.C.App., 407 A.2d 569 (1979).

commitees at such proceedings.[9] In view of this precedent, we must agree that appellant's willingness to assume the constitutional validity of § 24–301(d)(2) cannot, in fairness, be said to imply a concession that all aspects of that procedure are justified solely on evidentiary (and thus nonpunitive) grounds.[10]

### III.

■ Now that we are confronted by the possibility that the criminal commitment procedure can, to some extent, be punitive yet constitutional, we must reconsider the nature of a § 24–301(d) confinement. There are three possibilities, not two as we originally perceived: (1) it is wholly rehabilitative (*i. e.*, not at all punitive), in which case an acquitee can be committed indefinitely, without regard to a hypothetical maximum prison sentence, subject only to the periodic review afforded civil commitees, *see Jones, supra* at 190; or, at the other extreme, (2) it is inherently punitive, in which case the release hearing procedure itself is unconstitutional, *see Baxstrom, supra; Humphrey v. Cady*, 405 U.S. 504, 510–

11, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972); *Brown, supra*, 155 U.S.App.D.C. at 409–10, 478 F.2d at 613–14 (Wright, J., dissenting); *Waite, supra*, 154 U.S.App.D.C. at 285–86, 475 F.2d at 396–97;[11] or, as appellant urges, (3) it is partially (but perhaps justifiably) punitive at the outset, in which case an acquitee, although lawfully confined for awhile, arguably must be released (or civilly committed) no later than the end of the maximum prison term for which the acquitee could have been sentenced.[12] *See Brown, supra*, 155 U.S.App.D.C. at 408, 478 F.2d at 612.

Assuming the constitutional validity of § 24–301(d), we must choose between the first and third alternatives to decide the issue raised by appellant.[13] If we conclude—as previously assumed—that § 24–301(d) is wholly rehabilitative, then our first opinion and order will stand. If, however, we conclude that § 24–301(d) in some respects is punitive, then appellant's argument may have merit.

Confronting the question that we dealt with only hypothetically in our first opinion,

---

9. *See, e. g., Mills v. State*, 256 A.2d 752, 755–57 (Del.1969) (upholding release hearing procedure using regular superior court jury with burden of proof on acquitee; both rationales); *State v. Allen*, 166 N.W.2d 752, 758 (Iowa 1969) (acquitees may be required to prove regained sanity beyond a reasonable doubt; evidentiary and punitive rationales); *State v. Shackford*, 262 A.2d 359, 366 (Me.1970) (same; punitive rationale); *Daniels v. Superintendent*, 34 Md. App. 173, 180, 366 A.2d 1064, 1069 (Ct.Spec. App.1976) (acquitees can be required to carry burden of proof; evidentiary rationale); *State v. Taylor*, 158 Mont. 323, 331, 491 P.2d 877, 881 (1971), *cert. denied*, 406 U.S. 978, 92 S.Ct. 2428, 32 L.Ed.2d 677 (1972) (same; punitive rationale); *In re Lee*, 46 App.Div.2d 999, 1000, 362 N.Y.S.2d 635, 636–37 (1974) (district attorney may participate in acquitee's release hearing; punitive rationale).

10. Accordingly, we retract the statement in our first opinion that "appellant must be presumed to agree that this confinement is not based, even in part, on punitive considerations; otherwise it would be unconstitutional under *Baxstrom, supra*; *see Humphrey v. Cady* . . ." *Jones, supra* at 189.

11. In this case, an acquitee would be entitled to release or to civil commitment proceedings

promptly after the insanity acquittal. *See Bolton, supra*.

12. We understand appellant to base his argument on the hypothetical maximum prison term to which the acquitee himself could be sentenced, not simply on the maximum sentence for the particular crime involved, without regard to the acquitee's own criminal history. We do not, however, resolve that question here.

13. Appellant declines to question the constitutionality of § 24–301(d) and we agree that this court should not issue an advisory opinion on that subject. On the other hand, appellant has said that assuming the validity of § 24–301(d), he should not be held—as in our first opinion— to assume that it in no respect is punitive, since there is respectable' legal precedent for the view that release-hearing procedures can be constitutional while partially punitive. We agree. Therefore, if, after examining § 24– 301(d), we conclude that it *is*, to some extent, punitive, we properly can refrain from evaluating its constitutionality and, instead, can make a narrower analysis determining whether such punitive procedures can be imposed for an indefinite period.

we reject the view that an acquitee's mental illness and dangerousness at the time of the offense are consistently such powerful evidence of illness and dangerousness later (*i. e.*, at the time of the "release hearing") that they raise a presumption of continuing insanity in every case. *See Brown, supra* at 409–10, 478 F.2d at 613–14 (Wright, J., dissenting); *Bolton, supra*, 130 U.S.App.D.C. at 8, 395 F.2d at 649. Thus, contrary to the assumption underlying our first opinion, we conclude that the difference between criminal and civil commitment procedures [14] cannot be justified on purely evidentiary grounds. It follows, therefore, that if society legitimately can place a greater burden on the acquitee to avoid continued confinement than it places on a prospective civil commitee, that burden must be justified by the public's interest in greater protection than it would be likely to receive by subjecting acquitees to the civil commitment process. Furthermore, because § 24–301(d) is premised, in part, on an earlier criminal offense—a confinement which might not have occurred if the government had the burden of proof before a new jury—this release-hearing procedure is, to some extent, "punitive."

The public's interest in safety is, of course, limited by the acquitee's right to equal protection. Assuming the best case for the constitutionality of § 24–301(d), appellant argues that its partially punitive character at least dictates, as a matter of equal protection vis-a-vis civil commitees, that acquitees be released (or civilly committed) no later than the end of the maximum prison term they could have received if criminally convicted. We agree.

■ According to *Baxstrom, supra*, 383 U.S. at 111, 86 S.Ct. at 763, "[e]qual protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance

to the purpose for which the classification is made" (citation omitted). *Accord, Bolton, supra*, 130 U.S.App.D.C. at 10, 395 F.2d at 651. On the basis of the partially punitive rationale for the criminal commitment scheme set forth earlier, *see* text and cases at note 9 *supra*, the criminal commitment scheme might survive equal protection scrutiny under *Baxstrom, supra*, even though the procedure for confining civil commitees provides greater protection for the individual at the outset (the right to a jury and burden of proof on the government). We agree with appellant, however, that there is no basis for confining an acquitee under § 24–301(d) beyond the length of the hypothetical maximum prison term, since that term marks the end of society's claim on that individual for any kind of punishment. Any longer confinement must depend, constitutionally, on a *de novo* civil commitment. *See Humphrey, supra*, 405 U.S. at 510–11, 92 S.Ct. at 1052–53; *Baxstrom, supra*, 383 U.S. at 110–11, 86 S.Ct. at 762; *Brown, supra*, 155 U.S.App.D.C. at 408, 478 F.2d at 612.[15]

### IV.

■ Accordingly, we hold that because the maximum possible prison term for which appellant Michael Jones could have been incarcerated has expired, he is entitled to release from St. Elizabeths Hospital, subject to the government's right to seek civil commitment. The opinion and judgment heretofore filed are therefore vacated. The government shall have 30 days from the date of the mandate issued pursuant to today's order in this case to initiate civil commitment proceedings against appellant. Once those proceedings have been initiated, he shall be confined, if at all, in accordance with Title 21 of the District of Columbia Code. In the event that appellant does not

---

**14.** *Compare* D.C.Code 1973, § 24–301(d) *with* § 21–545(b).

**15.** It is important to stress that if the § 24–301(d) release hearing is valid, as assumed, despite a partially punitive underpinning, our holding permits confinement under § 24–301(d) to the end of the maximum applicable prison

term, no matter how long that may be. We perceive no basis for the *Brown* court's view that the punitive justification for § 24–301(d) may expire short of the maximum sentence (and "would generally not exceed five years"). *Id.* at 408, 478 F.2d at 612.

become the subject of civil commitment proceedings during this 30-day period, he shall be given his freedom.

*So ordered.*

MACK, Associate Judge, concurring:

I concurred in our first opinion, 396 A.2d 183 (1978), because I did not construe that analysis as holding that the criminal commitment procedures of D.C.Code 1973, § 24–301 would pass muster as against a challenge on equal protection or procedural due process grounds, citing *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). I concur in the instant holding because the serious reservations that I held about the constitutionality of such procedures are erased by our choosing to mandate that an acquitee must be released from incarceration at the expiration of the maximum period of possible imprisonment for the criminal charge, subject to the government's right to seek civil commitment.

KELLY, Associate Judge, dissenting:

I would adhere to our original decision to affirm the order on appeal (*Jones v. United States,* D.C.App., 396 A.2d 183 (1978)) and so dissent from this opinion on rehearing.