THE STATE, EX REL. WYMAN, *v.* TURK, SUPT. OF LIMA STATE HOSPITAL.

(Decided October 25, 1939.)

*Mr. John A. Sieber,* for plaintiff.
*Mr. Thomas J. Herbert,* attorney general, and *Mr. Aubrey A. Wendt,* for defendant.

GUERNSEY, J.   This is a proceeding in *habeas corpus* brought by Robert S. Wyman against Dr. H. M. Turk, Superintendent of Lima State Hospital.

In his petition Robert S. Wyman alleges that he has been confined in Lima State Hospital since February 8, 1927, and that he was ordered committed to that in-

stitution by order of the Common Pleas Court of Ashtabula county, Ohio, until restored to reason. He further alleges that he is now sane and is being unlawfully restrained of his liberty by Dr. H. M. Turk, superintendent of the institution.

In his return to the writ of *habeas corpus* issued herein the superintendent represents that he has Robert S. Wyman in his custody and, ''that he has had custody of Robert S. Wyman since February 8, 1927, by virtue of an order of commitment issued by the Common Pleas Court of Ashtabula county, Ohio, under authority of Section 13441-2, General Code, until he be restored to reason and upon being restored to reason the accused shall be proceeded against as provided by law.''

It was conceded by the parties at the trial that at the time of his commitment to Lima State Hospital, Robert S. Wyman was under an indictment for murder in the first degree, in the Common Pleas Court of Ashtabula county. The commitment to Lima State Hospital was made pursuant to the provisions of Sections 13614 and 13577, General Code (repealed 113 Ohio Laws, 123), and Section 13608, General Code (repealed 113 Ohio Laws, 123), as modified by the provisions of Sections 13614 and 13577, General Code, then in effect, and not under authority of Section 13441-2, General Code, as stated by the superintendent in his return of the writ, Section 13441-2 being a later enactment. *State, ex rel. Diehlman,* v. *Clark, Supt.,* 102 Ohio St., 404, 131 N. E., 734.

Section 13614, General Code, provided that when a person indicted appeared to be insane, proceedings should be had as provided for persons not indicted because of insanity. If such person was found to be insane he should be committed to the Lima State Hospital until restored to reason when the superintendent thereof should notify the prosecuting attorney of the proper county who should proceed as provided by law,

with the trial of such person under indictment. Section 13577, General Code, and Section 13608, General Code, as modified by Section 13577, General Code, provided the necessary procedure.

These sections conditioned the commitment therein provided upon insanity at the time of the trial of the question of insanity without reference to whether insanity theretofore existed or whether the insanity of the defendant would constitute a defense to the offense charged.

Certain modified provisions of these sections, with other provisions, are now incorporated in Sections 13441-1 and 13441-2, General Code.

None of Sections 13614, 13577 or 13608, General Code, define insanity and at the time of commitment in the case at bar there was no statutory definition of the words "insane" or "insanity" as used in those sections.

There being no statutory definition of the words "insane" or "insanity" as used in Sections 13577, 13614 and 13608, General Code, the words as used therein must be construed as having the meaning they had at common law and by general usage at the time those sections were enacted with reference to the commitment of defendants as insane under circumstances similar to those mentioned in those sections.

Under the common law and in the absence of statutory authority, courts had jurisdiction to inquire into the sanity of and commit persons under indictment as insane, either before trial or after trial and acquittal, upon the ground of insanity, and this jurisdiction at the time the sections in question were enacted had been extended by statute to the commitment of persons as insane who had not been indicted by reason of insanity.

The exercise of the jurisdiction both under the common law and under the provisions of the section mentioned, to determine whether a defendant was sane or insane, and if found insane to commit as insane before

trial, comprehended two general purposes, the first being to protect the defendant from being tried when he had insufficient mental capacity to be legally triable and to have him available for trial if and when he should recover sufficient mental capacity to be legally triable, and the second being to protect the public from a defendant who by reason of his mental unsoundness, if allowed to remain at large, would probably endanger life, person or property or the safety, peace, health or morals of the public.

Under the section mentioned the sole fact that a person is of unsound mind is not sufficient to justify commitment or detention on commitment. Taking into consideration the purposes of the commitment there are two general tests by which the insanity of the defendant for the purpose of commitment or detention on commitment are to be determined. The first is whether the person indicted has sufficient mental capacity to recall the events of his life so that he can furnish his counsel facts which ought to be stated and presented to the jury at his trial for the crime charged. *State, ex rel. Davey, Gov.,* v. *Owen, Judge,* 133 Ohio St., 96, 104, 12 N. E. (2d), 144, 114 A. L. R., 686. The second is whether there exists in the defendant that degree or character of mental unsoundness as to make it reasonably probable that, if allowed to remain at large, he would, by reason of such mental condition, endanger life, person or property, or the safety, peace, health or morals of the public. 32 Corpus Juris, 679, Section 345; 6 Ruling Case Law, 203, Section 199.

In order to warrant the discharge of such person on a writ of *habeas corpus,* as sought in the instant case, it must affirmatively appear that the degree of mental capacity prescribed in the first test mentioned exists, and that the degree or character of mental unsoundness prescribed in the second test does not exist.

Applying these tests in the case at bar we find from

the evidence upon the first test that Robert S. Wyman has sufficient mental capacity to recall the events of his life so that he can furnish to his counsel the facts which ought to be stated to the jury at his trial for the crime charged, but upon the second test we find that there exists in Robert S. Wyman that degree or character of mental unsoundness as to make it reasonably probable that if allowed to remain at large he would by reason of such mental condition, endanger life, person or property, or the safety, peace, health or morals of the public.

Both of the above tests not being resolved in favor of Robert S. Wyman the discharge of said Wyman upon the writ of *habeas corpus* heretofore issued is denied, and the petitioner is remanded to the custody of the Superintendent of Lima State Hospital.

It is further ordered that the petitioner pay the costs herein.

*Judgment accordingly.*

KLINGER, J., concurs.

CROW. P. J., dissents only from the judgment, being of the opinion that the evidence proves that it is not reasonably probable that petitioner would endanger life, person or property, or the safety, peace, health or morals of the public; and concurs in the reasoning of the opinion on the legal principles involved.