STATE ex rel. BARNES, Appellant v. BEHAN, Respondent

(131 N.W.2d 81)

(File No. 10140.   Opinion filed October 22, 1964)

Roubideaux, Poches & Reade, Fort Pierre, for plaintiff and appellant.

David F. Sieler, State's Atty, Pennington County, Robert L. Varilek, Deputy State's Atty., Pennington County, Rapid City, for defendant and respondent; Frank L. Farrar, Atty. Gen., Robert A. Miller, Asst. Atty. Gen., Pierre, on the brief.

BIEGELMEIER, P. J.   To a charge of murder petitioner pled not guilty by reason of insanity. The jury returned a verdict to that effect. The circuit court entered an order declaring petitioner's discharge dangerous to the public peace or safety and ordered him committed to the State Hospital for the Insane "until such time as said defendant becomes sane, and until he no longer constitutes a danger to himself or to society or any member thereof, upon determination by a court of competent jurisdiction." Petitioner's first application for habeas corpus in December 1962 was denied and upon appeal affirmed by this court October 23, 1963. State ex rel. Barnes v. Behan, 80 S.D. 370, 124 N.W.2d 179. October 24, 1963, petitioner filed the second application for a writ of habeas corpus and upon the return a different circuit judge heard testimony and denied the writ. Petitioner appealed.

The statute under which the order of committal was entered, SDC 1960 Supp. 34.3672 provides:

"If the defense involves the sanity of the defendant when the alleged crime was committed, the jurors must be instructed, if they acquit him on the ground of insanity at that time, to state the fact in their verdict. The Court may thereupon, if the defendant is in custody and it deems his discharge dangerous to the public peace or safety, order him to be committed to a State Hospital for the Insane until he becomes sane."

The order of the trial judge committing the petitioner to the State Hospital not only stated that commitment should be until he became sane as the statute provides, but contained the additional provision for commitment quoted above. As the hearing judge aptly noted in his memorandum opinion the latter language was treated as surplusage by the opinion of this court and not referred to as a basis or foundation for the affirmance. However, on the first appeal the court held a person found not guilty by reason of insanity of a crime of violence and committed to a hospital for the insane should not be released as sane if there is a reasonable probability that by reason of mental disease or unsoundness of mind he is a danger to himself, to his own safety, or a menace to the safety, person or property of other people. State ex rel. Barnes v. Behan, supra.

Petitioner's counsel expressed dissatisfaction with the first Barnes decision. Psychiatry and law are both engaged in a search to understand and solve the mystery of the human mind; to study and define mental diseases and defects and their effect on the responsibility and accountability of a person for his acts. The law reviews abound with articles relating to the subject. Recognizing we are dealing in a difficult field, we are not inclined to recede from the Barnes opinion. While they were not cited there, the result and reasoning of In re Palmer, 26 R.I. 222, 58 A. 660, 26 R.I. 486, 59 A. 746, and Salinger v. Superintendent, 1955, 206 Md. 623, 112 A.2d 907, are in accord. In the last case the court wrote:

"Under the statutes, as generally interpreted (whether explicit in this regard or not), the right to confine or keep confined an insane individual depends upon whether or not the person, if free, will probably imperil his own safety or the safety and property of others," citing many cases. 112 A.2d 910.

With this guide in mind the hearing judge entered findings of fact which included the following:

"2. On the 26th day of October, 1963 and at the time of the hearing of the Writ herein the plaintiff was capable of knowing the wrongfulness of homicide and other crimes.

"3. At the conscious level the plaintiff harbors no ill will toward his ex-wife or any other person. He does not have an abnormal mental condition in the sense of being psychotic.

"4. That shortly following the homicide and at a time when he was under the influence of self-administered drugs, the plaintiff expressed extreme regret that his ex-wife had not been killed and stated an intention to try again and that he would 'get her' the next time.

"5. That the plaintiff has a passive-aggressive personality and, under stress, would in all probability be dangerous to others, particularly his ex-wife and others who might associate with her.

"6. That although the plaintiff is receiving no specific treatment he is being and will be benefited by his confinement."

One of the conclusions of law was petitioner "has failed to establish that he is now sane."[1] Other facts which clarify these find-

---

1. Sanity or insanity is a fact question. As here stated and designated a conclusion of law, it partakes of an ultimate finding of fact as well as a conclusion of law. State ex rel. Van Loh v. Prosser, 78 S.D. 35, 40, 98 N.W.2d 329, 332.

ings are petitioner's wife had obtained a divorce prior to the homicide and the murder charge resulted from petitioner killing her employer on which occasion, though he shot her several times, she recovered.[2]

██ Petitioner's brief states the assignments of error raise the question of whether the order appealed from is erroneous because the evidence established there is no reasonable probability that by reason of mental disease or unsoundness of mind he is a danger to himself, to his own safety or a menace to the safety, person or property of other people. Accepting that view of the assignments, in effect they claim insufficiency of the evidence to justify the findings and the order based thereon. See SDC 1960 Supp. 33.0735. It is presumed the findings are correct and cannot be disturbed by an appellate court unless it is satisfied they are contrary to the clear preponderance of the evidence. In our review, we accept that version and inferences which can be fairly drawn therefrom which is favorable to the trial court's action. The reasons for this are set out in Beatty v. Depue, 78 S.D. 395, 103 N.W.2d 187.

The memorandum opinion (SDC 1960 Supp. 33.0738) of the circuit judge elaborates the findings and reviews the evidence more in detail in the following words:

"One psychiatrist tells us that Barnes was insane, by the legal test, at the time of the homicide, and that later the same day he was experiencing or was in a manic episode. The Court understands mania to mean an obsessive preoccupation with something. Clearly it is intended to indicate an abnormal condition. Clearly the inability to distinguish between right and wrong is abnormal in an adult. He tells us further that Barnes has now fully recovered, that there is such a thing as temporary insanity and that Barnes does not presently constitute a danger to anyone, if released. The other psy-

2. At oral argument, petitioner's counsel stated Barnes' former wife had visited him several times, thus indicating she has no fear of him. Unfortunately this does not appear in the record so the trial judge could not, nor may this court, ascribe any weight to it.

chiatrist tells us that, at the time of the homicide, Barnes was legally sane and fully responsible for his acts. That he is still sane and does not have an abnormal mental condition. He further tells us that Barnes committed the homicide at the conscious level and at the present time, at the conscious level, harbors no ill will toward any known person. He says that the Relator will be benefited by the opportunity to contemplate his acts.

"Consideration of the foregoing, standing alone, would tend to establish that Barnes could be safely returned as an unsupervised member of society, however, this same psychiatrist, and the Court deems him to be in the better position to know, asserts the substantially unqualified opinion that Barnes is dangerous to his ex-wife or anyone who might associate with her. He tells us that Barnes has a passive aggressive personality, which the Court understands to mean the reaction of a person to his environment, not controlled by active effort and which is inseparable from its emotional association. He also tells us that it would not require the same set of circumstances as prevailed before, that problems could bring about a stress which could cause Barnes to conclude that there was no other way out and would act with violence. This psychiatrist testified that he believed Barnes to be a danger to his wife, depending on circumstances. No one attempted to delineate just what circumstances, and no one can foretell what circumstances might take place. It is faintly significant that Barnes himself testified that he would not return to Rapid City because he felt to do so would lead to trouble, although he thought it would come from his ex-wife and not from him.

"We deal here in a somewhat nebulous field, where the layman is wholly unqualified to make a determination and the opinions of the experts to be found in the record are in disagreement. We try to foresee the future both as to circumstances and reasonable probable results. Concrete facts to act as guideposts are not avail-

able as to these matters. However, one inescapable fact stands starkly. Under stress Barnes did take the life of a fellow human being. No human power can undo his act. He has thus established that he has the potential capacity to commit the ultimate wrong.

"In the light of this potential the Court feels that the record must be examined more critically than would be the case had something less than a lethal attack been made. It may be that with the passage of time the Relator will arrive at and demonstrate such a personality change as will permit experts to negative his danger potential beyond a reasonable doubt. This Court cannot find that he has done so on this hearing and, accordingly, the Writ will be quashed."

■ From this summary the trial judge concluded the evidence had not met the "reasonable probability" standard of the prior appeal. We believe the evidence, taken as a whole, sustains this summary, the findings and conclusion of the trial judge.[3]

Petitioner's counsel in oral argument contended the continued confinement is a deprivation of freedom inconsistent with the not guilty verdict. It must be apparent petitioner is not being confined as punishment for a criminal offense. He has committed a homicide, taken the life of another; because of his insanity the law exculpates him from an otherwise criminal act. For this reason the legislature has placed him in a separate class of persons. The state, as **parens patriae,** may make provision for the care of those unable to care for themselves, as in the case of insane persons or neglected children. Re Clark, 86 Kan. 539, 121 P. 492, 39 L.R.A.,N.S., 680. In upholding a similar statute, passed after the homicide was committed, which provided for confinement on a verdict of acquittal by reason of insanity, the court in the last cited case said:

---

3. Petitioner was a witness on his behalf and the trial judge was able to observe his demeanor and appearance. While this may not be regarded as evidence, it does enable the trier of facts to more satisfactorily weigh the evidence given in court and assist him in determining the issues of fact. It is a factor to be borne in mind in assessing the sufficiency of the evidence. Cf. Beatty v. Depue, supra, where trial judge viewed land involved.

"The purposes of the statute are highly beneficent. It gives protection to the public against repetitions of homicides, or other acts of irresponsible frenzy or distraction, and affords to the unfortunate persons so committed safe seclusion and humane treatment which it is the province of the state to give in the exercise of its parental power."

Similarly the California court, in Ex parte Slayback, 209 Cal. 480, 288 P. 769, 772, quoted from the notorious Thaw case which said:

"Such a commitment is not for the punishment of such a defendant, for there can be no punishment for him who has been acquitted, but it is for protection for the public made in the exercise of the police power * * *."

Continuing it wrote:

"If it is the duty of the state to restrain one mentally afflicted, * * * this duty becomes far more urgent and pressing when it is proven that such person is not only insane, but has developed criminal tendencies as a result of his mental derangement which has caused him to take the life of a human being under circumstances which, but for his mental state, would amount to murder."

See also Weihofen, Institutional Treatment of Persons Acquitted by Reason of Insanity, 38 Tex.L.Rev. 849 at 850; Thomas, The Dangerous Offender, 14 Syracuse L.Rev. 576.

The evidence indicated, as the court found, that at a conscious level petitioner harbored no ill will toward his wife or any person and there had been considerable change for the better in that respect. It was stated defendant Superintendent may in the near future conclude it appropriate to release petitioner, but believes he cannot do so in the original commitment order leaving that determination to "a court of competent jurisdiction". As indicated that clause was not given any effect in our prior

opinion.[4] It merely recognized and stated one of the means available for a release and did not limit the action of the Superintendent or other authorities in the performance of their duties in administering the hospital affairs and providing for release under such conditions as may be proper.

Affirmed.

RENTTO, HANSON and HOMEYER, JJ., concur.

ROBERTS, J.   I concur in affirmance, but only on the ground that appellant having the burden of proof on the issue of insanity did not make out a case with such certainty that it was unreasonable for the trial court to fail to find affirmatively for him.

---

[4]. Nor did the circuit judge in the hearing on the present application. The order quashing the writ, remanded petitioners to custody only until he "becomes sane". In 38 Tex.L.Rev. at p. 863, Professor Weihofen writes: "A few states expressly permit the hospital authorities to discharge a person committed after acquittal of crime without requiring a court order. In a number of states the statutes are silent or unclear; the implication is that such persons may be discharged like any other patients, which usually means by the hospital superintendent." South Dakota is cited as among the latter states. Unless statutes specifically limit the power, patients may be discharged by other than habeas corpus. Our statutes permit such action by a county judge on report of a commission, 30.0112; by State Board of Charities and Corrections, 30.0202; and by the Superintendent, 30.0218. The general subject is annotated in 95 A.L.R.2d 54, and see Weintraub comments in Criminal Responsibility: Psychiatry Alone Cannot Determine It, 49 A.B.A.J. 1075, 1078 (Nov. 1963)