CHARLES P. WILSON *v.* STATE OF INDIANA.

[No. 971S245. Filed October 16, 1972.]

*James L. Brand,* of Greenfield, for appellant.

*Theodore L. Sendak,* Attorney General, *A. Frank Gleaves, III,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was indicted for First Degree Murder committed on December 12, 1967. He filed a suggestion of present insanity and a plea of insanity in June of 1968. Pursuant to court order, he was examined by Doctors Smith and Mericle, who filed a joint report of their examination along with the report of a Doctor Stevens, a

psychologist, who had examined the defendant at their request. In July of 1968, after hearing, the court found the defendant incompetent to stand trial and ordered him committed to the Department of Mental Health. He was admitted to Madison State Hospital where he remained under treatment for over two years. In July, 1970, Doctors McAtee and Fong of the Madison Hospital filed their joint statement that (1) the defendant was fully recovered, (2) that further hospitalization would be of no benefit to him and (3) that he was then competent to stand trial. In November of 1970, the defendant was found competent to stand trial and was tried. The trial resulted in a hung jury.

In February of 1971, pursuant to the court order, the defendant was examined by Doctors Donahue and Hull and was again found competent to stand trial. He was tried in March of 1971 and found not guilty by reason of insanity. Four days later, on March 16, the court appointed Doctors Smith and Mericle to examine the defendant, to determine his sanity at the time of trial and, if found to be then sane, to determine if a recurrence of an attack of insanity was highly probable. The appointed Doctors re-examined the defendant and on March 18, 1971 the court conducted a hearing at which Doctors Smith and Mericle, each of whom had examined the defendant but twice in the two and one-half year period, once in June of 1968 and once in March of 1971 and had spent a total time of not more than four hours with him, testified that in their opinion the defendant was sane at the time of trial but that a recurrence of an attack of insanity was highly probable. Doctors McAtee and Fong, under whose custody and treatment the defendant had been continuously since July of 1968, testified that in their opinion and in the opinion of their entire staff of Doctors who had examined and treated the defendant at the Madison Hospital during his entire commitment, the defendant was presently sane, had been for several months, that the probability of a recurring attack was very, very low, and that but for the pending proceedings,

he would have been released several months previously. They further testified that further confinement in a mental institution not only would not be beneficial but would probably be harmful to his mental health. On March 19, 1971, the court found the defendant to be sane at the time of trial but that a recurrence of an attack of insanity was highly probable and ordered him committed to the Department of Mental Health. A motion to correct errors was timely filed, was overruled, and this appeal followed.

The appeal attacks the constitutionality of the act under which the defendant has been committed and is now confined under both the Constitution of the United States and of the State of Indiana, upon numerous grounds which need not be here set forth in detail. Among them are the ones we deem determinative of the issues and compel us to reverse the decision of the trial court.

It should be pointed out at the threshold that the power of the State of Indiana to protect society, by providing for the involuntary confinement of the dangerously insane is not in issue. In so doing, however, the State must proceed by due process and must provide the equal protection of the law. Our decision in this case is compelled by the decision of the Supreme Court of the United States in the case of *Baxstrom* v. *Herold* (1966), 383 U.S. 107, 86 S. Ct. 760, 15 L. Ed. 2d 620. Baxstrom had been convicted of second degree assault in April of 1959, and sentenced to a term of two and one-half to three years in a New York prison. On June 1, 1961, he was certified as insane by a prison physician and transferred to a state hospital under the jurisdiction of the Department of Correction and used for the confinement and care of the mentally ill when serving criminal sentences. As he was nearing the end of his prison term, in November of 1961, the Director of the Hospital filed a petition showing such fact and requesting that he be committed pursuant to the civil commitment statute. A judicial hearing was had, at which the medical testimony indicated that Baxstrom was

still mentally ill and in need of institutional care. Baxstrom requested transfer to a civil hospital under the jurisdiction of the Department of Mental Hygiene but under the statute, that decision was the sole prerogative of the Department of Mental Hygiene, which had already determined, ex parte, that Baxstrom was not suitable for care in a civil hospital. In consequence, on December 18, 1961, the day his criminal sentence expired, custody over Baxstrom was shifted from the Department of Correction to the Department of Mental Health, but he was retained at the Correction Department Hospital facility. An immediate petition for a writ of habeas corpus was dismissed. In 1963, Baxstrom again petitioned for a writ of habeas corpus, alleging that he was sane and should be discharged, and in the alternative, that if he be found not sane, he should be transferred to a civil facility. Due to his indigency and his incarceration, he was unable to produce evidence to refute the previous evidence of insanity and habeas corpus was again dismissed. His petition for transfer was again denied as being beyond the authority of the court. On appeal to the Appellate Division, the dismissal of the habeas corpus writ was affirmed and the Court of Appeals denied leave to appeal. The United States Supreme Court granted certiorari.

In reversing the judgment of the Appellate Division, the Supreme Court pointed out that the New York statutes prescribed procedures for civil commitment of the mentally ill upon expiration of their prison terms and similar procedures for the commitment of all other allegedly mentally ill persons, but that there were differences therein that violated the equal protection of the law demands of the Constitution of the United States. It stated, an authority of *Walters* v. *City of St. Louis* (1954), 347 U.S. 231, 74 S. Ct. 505, 98 L. Ed. 660:

"Equal protection does not require that all persons be dealt with identically, but it does require that a distinction

■ made have some relevance to a purpose for which the classification is made. * * * Classification of mentally ill persons as either insane or dangerously insane of course may be a reasonable distinction for purposes of determining the type of custodial or medical care to be given, but it has no relevance whatever in the context of the opportunity to show whether a person is mentally ill *at all.* For purposes of granting judicial review before a jury of the question whether a person is mentally ill and in need of institutionalization, there is no conceivable basis for distinguishing the commitment of a person who is nearing the end of a penal term from all other civil commitments."

The unwarranted variances between the procedures applicable generally and those applicable to persons in Baxstrom's position were, (1) the right to a de novo review by jury trial of the question of sanity granted generally, but denied those in Baxstrom's position, and (2) the requirement that persons committed civilly, other than those in Baxstrom's position, be found, by judicial determination, to be so dangerously mentally ill as to constitute a danger to the safety of other patients, hospital employees and the community prior to being committed to the facility under the Department of Correction. Persons committed at the expiration of penal terms could be so committed by mere administrative decision.

The respondent, in support of the decision of the Appellate Division, contended that to classify Baxstrom and others in his position with those having been judicially found to be dangerously insane was reasonable, because such persons were not only insane but had proven criminal tendencies, as shown by their past criminal records. The court rejected this, saying:

"We find this contention untenable. Where the state has provided for a judicial proceeding to determine the dangerous propensities of all others civilly committed to an institution of the Department of Correction, it may not deny this right to a person in Baxstrom's position solely on the ground that he was nearing the expiration of a prison term. It may or may not be that Baxstrom is presently mentally ill

and such a danger to others that the strict security of a Department of Correction hospital is warranted. All others receive a judicial hearing on this issue. Equal protection demands that Baxstrom receive the same."

"In order to accord to petitioner the equal protection of the laws, he was and is entitled to a review of the determination as to his sanity in conformity with proceedings granted all others civilly committed under Section 74 of the New York Mental Hygiene Law. He is also entitled to a hearing under the procedure granted all others by Section 85 of the New York Mental Hygiene Law to determine whether he is so dangerously mentally ill that he must remain in a hospital maintained by the Department of Correction. * * *."

This brings us to a comparison of the Indiana Statutes relative to civil commitment and detention of the dangerously insane and the commitment and detention of the defendant under Acts of 1951, ch. 238, § 1, as amended by Acts of 1961, ch. 151, § 1 and by Acts of 1967, ch. 291, § 1, being 1971 Supp., Burns Ind. Stat. Ann. § 9-1704a, IC 1971, 35-5-3-1; and Acts of 1913, ch. 298, § 5, as amended by Acts of 1927, ch. 102, § 2 and by Acts of 1963, ch. 111, § 1, being 1971 Supp., Burns Ind. Stat. Ann. § 9-1705, IC 1971, 35-5-2-4, which follow:

"9-1704a. Commitment to the department of mental health.—If, in any criminal action, the court or jury trying the cause finds the defendant not guilty on the ground of insanity, the court shall find as to the defendant's sanity at the time of the trial, and if the court shall find that the defendant is insane at the time of the trial, he shall order the defendant committed to the department of mental health, to be confined by the department in an appropriate psychiatric institution; or if he shall find that the defendant is sane at the time of trial, but the recurrence of such an attack of insanity highly probable, he shall order the defendant committed as above provided. Such person shall be committed to the department of mental health until released as hereinafter provided."

"9-1705 [2294]. Application for discharge by patient confined in insane hospital.—At any time after two [2] years from the date of said commitment any person so confined in a hospital for the insane may file his or her

application to be discharged, in the court from which they were committed, and upon satisfactory proof being made to such court of the restoration of the sanity of such person and that the recurrence of such an attack of insanity is improbable, the court shall order his or her discharge from such institution, and enter a final judgment discharging him or her: Provided, however, That a second or subsequent application for discharge shall not be made within two [2] years from the time of any previous application."

We will not burden this opinion by here copying all of the statutes upon civil commitments,[1] but will only make reference to certain provisions thereof applicable to the commitment and detention of the dangerously insane and with which the above quoted statutes are at a substantial and unwarranted variance. It should be first noted that the statutes relative to civil commitments and detention of the insane contain one section applicable only to those regarded as dangerous to the community. 1964 Repl., Burns Ind. Stat. Ann. § 22-1212. Otherwise, the procedures applicable to the dangerously insane are the same as those applicable to those who are insane but not dangerously so.

First we shall look to the procedures for commitment. Aside from the provision for a sworn statement of a responsible

---

1. Acts 1919, ch. 184; Acts 1927, ch. 69, as amended by Acts 1929, ch. 39, by Acts 1933, ch. 95, by Acts 1943, ch. 195, by Acts 1953, ch. 119 and by Acts 1957, ch. 193; Acts 1945, ch. 335, as amended by Acts of 1951, ch. 191, Acts 1945, ch. 259; Acts 1955, ch. 118; Acts 1955, ch. 178, as amended by Acts 1957, ch. 144, by Acts 1959, ch. 291, by Acts 1961, ch. 34 and by Acts of 1969, ch. 361; Acts 1955, ch. 338, as amended by 1971 P.L. 223; Acts 1957, ch. 276, as amended by 1971 P.L. 223; Acts 1957, ch. 359, as amended by Acts 1961, ch. 143, by Acts 1965, chs. 19, 54, 72 and 155, by Acts of 1967, ch. 205 and by 1971 P.L. 223 and 224; 1971 P.L. 474, as amended by 1972, P.L. 3. 1964 Replacement Burns Ind. Stat. Ann. and 1971 Supplement thereto §§ 22-1101 through 22-1105, §§ 22-1201 through 22-1256, §§ 22-1301 through 22-1324.

Indiana Code: 16-13-2-9 through 16-13-2-10; 16-13-5-1 through 16-13-5-5; 16-13-12.8-1 through 16-13-12.8-10; 16-14-1-1 through 16-14-1-4; 16-14-3-1; 16-14-4-1 through 16-14-4-2; 16-14-9-1 through 16-14-9-31; 16-14-14-1 through 16-14-14-19; 16-14-15-1 through 16-14-15-7; 16-14-16-1 through 16-14-16-5; 16-14-19-1; 35-5-3-3.

citizen and physician and the provision for notice in the civil proceedings, which might logically be legislatively eliminated in view of the defendant's having raised the issue of sanity, there are other distinct differences. Those charged civilly are entitled to a trial conducted upon the sole issue of sanity. They are entitled, in appropriate cases, to temporary commitments not to exceed ninety [90] days each. Prior to commitment, other than temporary commitment, they are entitled to examination by two qualified physicians, other than the physician who signed the charging statement. If practicable, one of such examining physicians is to be a qualified phychiatrist, and the examination and report of each are to be made independently of those of the other. There is no provision for trial upon the issue of insanity under Burns § 9-1704a, except to the extent that it is incidental to the plea in the crime charged. Although, as a matter of practice, the trial courts may afford the acquitted defendants separate hearings, they may not be required to do so, and it is inherently unfair to require those preoccupied with the defense of an alleged crime upon the grounds of insanity to also give evidence that such insanity no longer exists and is not highly probable to recur. Such a hearing is inconsistent with the requirements of due process. The criminal statutes make no provision for voluntary or temporary commitments, either of which may be preferable; and there is no provision for the examining physicians to conduct independent examinations or to be qualified psychiatrists. In *Cameron* v. *Mullen* (D.C. Cr. 1967), 387 F. 2d 193, the court, commenting upon *Baxstrom, supra,* said:

> "* * * Baxstrom thus might be said to require the conclusion that, while prior criminal conduct is relevant to the determination whether a person is mentally ill and dangerous, it cannot justify denial of procedural safeguards for that determination."

The same court in *Bolton* v. *Harris* (1968), 395 F. 2d 642, considering the validity of sanity commitment proceedings

applicable to those convicted of crimes, reached the same conclusion, saying:

"* * * Baxstrom, Lally and Mullen render Subsection (d) constitutionally suspect because the subsection provides radically different procedures for patients acquitted by reason of insanity and for civilly committed patients."

In the recent case of *Jackson* v. *Indiana* (June 7, 1972), 406 U.S. 715, 92 S. Ct. 1845, 32 L. Ed. 2d 435, the Supreme Court of the United States reversed this Court, saying, that the pendency of criminal charges could not deprive Jackson of substantial rights to which he would have been entitled under other commitment statutes. The high court held that by subjecting Jackson to a more lenient commitment standard and to a more stringent standard of release than those generally applicable to all others not charged with offenses deprived him of the equal protection of the laws under the Fourteenth Amendment.

Subsequent to the commitments, there are other disparities between the procedures applied to those committed civilly and those committed under Burns § 9-1704a which do not conform to the equal protection requirements. An individual committed civilly may be granted either a discharge or a convalescent leave from the psychiatric institution at any time within the discretion of the superintendent, and his commitment is subject to revocation, termination or amendment by the court at any time. The defendant has no such opportunities but is committed for an absolute and arbitrary period of two [2] years[2] and may thereafter be released only upon approval by the court. The civilly committed patient may have relief by habeas corpus, although he may seek such writ not more than once every three months, but the defendant may have a judicial review but once every two years,[2] no matter how sane and innocuous he may be. The

---

2. By amendment of 1972, this period was reduced to six months. 1972 Public Law 21C. IC 35-5-2-4.

statutes applicable to civil commitments permit the court to commit an eligible veteran to a federal hospital and otherwise limits commitment to a psychiatric hospital in the district of his residence. Those committed under Burns § 9-1704a are subject to confinement in any appropriate psychiatric hospital as may be determined by the Department of Mental Health.

Having placed his former sanity in issue and having been acquitted by reason of insanity existing at the time of the crime charged, the defendant, quite logically, falls within the class of individuals possibly suffering from mental illness and within the subclass therein of those who may be dangerously mentally ill. The State, having enacted elaborate statutory safeguards to provide for the protection of society from people dangerously mentally ill, may not, consistent with the equal protection requirements as applied in *Baxstrom, supra,* and *Jackson, supra,* arbitrarily subject the defendant, as a person acquitted of crime by reason of insanity, to the substantially different procedures of Burns § 9-1704a and § 9-1705 and deny to him the protection and safeguards afforded others who may be equally insane and equally dangerous but concerning whom the possibility of such mental condition may have been differently manifested. The reasonableness of this position becomes even more apparent when we consider that one defending a criminal charge upon grounds of insanity has no burden to prove such insanity. *Walters* v. *State* (1915), 183 Ind. 178, 108 N. E. 583; *Young* v. *State* (1972), 258 Ind. 246, 280 N. E. 2d 595; and his acquittal upon such grounds is conclusive only that the State failed to prove sanity beyond a reasonable doubt. Thus an acquittal does not, in law, raise any presumption of insanity; and the commitment under Burns § 9-1704a actually is the result of a finding that there is a high probability of recurrence of insanity which has not yet been shown to have ever existed.

A defendant, having raised the issue of insanity as a defense, it is altogether reasonable that the State inquire further following an acquittal, but such inquiry must be conducted under the civil statutes, and an acquitted person is entitled to have the issue of mental health and danger determined by the same procedures and standards applicable to citizens who are likewise suspect; and, if committed, he is entitled to the same confinement procedures and standards for release applicable to others similarly situated. If the State is concerned about the potential danger to the defendant or the community in the event of an acquittal upon the criminal charge, the procedure for civil commitment should be commenced and the warrant provided by Acts 1957, ch. 359, § 703, Burns § 22-1222, IC 1971, 16-14-9-22 in advance of the verdict.

The judgment of the trial court is reversed by reason of the unconstitutionality of the statutes under which defendant has been committed and is being detained. The defendant is to be discharged, subject, however, to proceedings, if any, that may be then pending under the civil commitment statutes.

DeBruler, Givan and Hunter, JJ., concur; Arterburn, C.J., dissents.

NOTE.—Reported in 287 N. E. 2d 875.