**T. L. ALLEN, Petitioner,**

v.

**Darrel RADACK, Superintendent, South Dakota Human Services Center, Yankton, South Dakota, Respondent.**

**No. CIV77–5001.**

United States District Court,
D. South Dakota.

Feb. 10, 1977.

Ronald E. Brodowicz, Rapid City, S.D., for petitioner.

Judith A. Atkinson, Asst. Atty. Gen., Pierre, S.D., for respondent.

## MEMORANDUM OPINION

BOGUE, District Judge.

### I. FACTUAL BACKGROUND

■ Petitioner in the above-entitled matter is presently in the custody of Respondent, having been first committed to such custody shortly after being acquitted by reason of mental illness of the charge of murder in the South Dakota Circuit Court for the Seventh Judicial Circuit. Under South Dakota law, an acquittal by reason of mental illness means that the defendant has sufficiently raised the issue of his or her sanity at the time of the offense, and that the prosecution has failed to prove beyond a reasonable doubt that the defendant was sane at the time of the offense. *State v. Waugh,* 80 S.D. 503, 509, 127 N.W.2d 429, 432 (1964). *See also State v. Graves,* 83 S.D. 600, 609, 163 N.W.2d 542, 547 (1968); *II South Dakota Pattern Jury Instructions,* 106 § 2–14–5c, e, f (1970).

Shortly after the jury returned its verdict on August 15, 1975, the presiding judge called petitioner herein and his counsel before the bench and orally made certain findings which provided the predicate for petitioner's commitment. The presiding judge began by stating that the jury verdict invoked a presumption that petitioner was insane, and then stated that the Court deemed petitioner to be dangerous to the public peace and to the safety of other persons, particularly in light of his addiction to alcohol. The judge further noted the Court's responsibility to ensure that petitioner received psychiatric care and treatment, and ordered petitioner

. . . committed forthwith to the Human Services Center at Yankton, South Dakota for psychiatric treatment and for treatment with respect to your addiction to alcohol, and there to remain until you are no longer mentally ill or addicted to alcohol and, additionally until you are no longer a danger to yourself, to the public peace or the safety of the people and the State of South Dakota, and then only are you to be released upon a determination by a Court in this state of competent

jurisdiction. *Transcript of August 15, 1975, proceedings at page three.*

On August 18, 1975, a written Order of commitment was entered by the trial judge. The written Order contained verbatim the operative language of the Court's oral commitment Order quoted above.

The State trial judge's findings were in conformity with the holding of the South Dakota Supreme Court in the case of *State ex rel. Barnes v. Behan*, 80 S.D. 370, 374, 124 N.W.2d 179, 181 (1963). His Order was authorized by S.D.Comp.Laws §§ 23–45–20, 21 (1967), which read:

> The court may [upon a verdict of not guilty by reason of mental illness] . . ., if the defendant is in custody and it deems his discharge dangerous to the public peace or safety, order him to be committed [to a hospital for mentally ill persons] . . . until he becomes sane.

On September 14, 1975, petitioner herein filed an application for a writ of habeas corpus in South Dakota Circuit Court for the First Judicial Circuit. The petition challenged the trial Court's jurisdiction to commit petitioner for alcohol addiction, challenged the indefinite term of commitment, and alleged that the petitioner was presently sane and entitled to be released. An evidentiary hearing was held on the state habeas corpus application on September 25, 1975. Following the hearing, petitioner herein was released. His release was predicated upon findings of fact that he was neither psychotic nor dangerous to himself or others at the time of the state habeas corpus hearing, and a conclusion that S.D.Comp.Laws §§ 23–45–20, 21 (1967) do not authorize commitment for alcoholism upon a verdict of not guilty by reason of mental illness.

The State of South Dakota appealed the judgment releasing petitioner, and the case was reversed and remanded on November 12, 1976. *State of South Dakota ex rel. Allen v. Radack*, S.D., 246 N.W.2d 661 (1976). In reversing the judgment and order of release, the South Dakota Supreme Court reviewed the testimony received at the hearing, and concluded:

> The thrust of this case is not whether addiction to alcohol is within the scope of S.D.C.L. § 23–45–20 and § 23–45–21. The real question in this case is whether or not petitioner has an abnormal mental condition that makes it probable that he would be a danger to himself or others. Obviously, not all alcoholics are a danger to other persons. Petitioner, however, apparently has an abnormal mental condition that when coupled with an excess of alcohol creates a propensity to commit violent crimes and makes him dangerous to society. Certainly this is an "abnormal mental condition." The trial court in committing petitioner made such a finding. Under the meager record in this case, it certainly had every right to do so, if for no other reason than the presumption that an accused acquitted by reason of insanity is in fact insane. 246 N.W.2d at 663.

The South Dakota Supreme Court remanded the case for rehearing in accordance with the following list of guidelines:

1. The test to be applied is whether or not petitioner has an abnormal mental condition that renders him potentially dangerous to others and that all reasonable medical doubts and reasonable judicial doubts are to be resolved in favor of the public safety.

2. The burden of proof rests upon petitioner.

3. The quantum of proof is "beyond a reasonable doubt."

4. To discharge petitioner from such commitment, the burden is upon him to show beyond a reasonable doubt that if discharged he would no longer be a danger to the public. 246 N.W.2d at 664.

The fundamental principle underlying the decision on appeal in petitioner's state habeas corpus was expressed by the South Dakota Supreme Court in the earlier case of *State ex rel. Barnes v. Behan*, 80 S.D. 370, 124 N.W.2d 179 (1963) as follows:

An accused acquitted by reason of insanity is presumed to be insane. This presumption goes beyond the familiar principle that a condition of insanity once established is presumed to continue. The reach of . . . [S.D.Comp.Laws §§ 23–45–20, 21] is not whether a person, engaged in the ordinary pursuit of life, is committable to a mental institution under the laws governing civil commitments. This statute applies to an exceptional class of persons who have committed acts forbidden by law . . . and obtained a jury verdict of "not guilty by reason of insanity" and then found by the trial judge to be dangerous to the public peace and safety if left at large. 80 S.D. at 374, 124 N.W.2d at 181 (citations omitted).

In South Dakota, when a person (other than one acquitted by reason of mental illness and thus subject to S.D.Comp.Laws §§ 23–45–20, 21) is mentally ill, dangerous to self or others and in need of immediate treatment, that person may be civilly committed under the provisions of S.D.Comp. Laws §§ 27–7A–2 *et seq*. Under those provisions such a person may be ordered taken into custody immediately upon receipt and examination of a verified petition alleging the basis for commitment. A mental examination must take place within twenty-four hours after the person is apprehended. A hearing to determine whether there is a factual basis for commitment must be held within five days, and there must be five days' notice of the hearing. If the person is committed to the South Dakota Human Services Center, the administrator of the center may release him or her within the first ninety days he or she is in custody there if it is determined by the administrator that the person committed under S.D. Comp.Laws §§ 27–7A–2 *et seq*. is "no longer mentally ill and in need of treatment." § 27–7A–16.

The generally applicable definition of mental illness in South Dakota includes a behavioral standard of danger to self or others. S.D.Comp.Laws § 27–1–1(3). *See also* § 27–1–1.1(3), (4). Even in the absence of the emergency situation envisioned in S.D.Comp.Laws §§ 27–7A–2 *et seq., supra*, dangerous individuals may be committed under S.D.Comp.Laws §§ 27–7–1 *et seq*. Commitment under these provisions is initiated by the states attorney with the use of a verified petition, supported by a certificate of medical examination, which must state facts showing probable cause to believe that the person in question is mentally ill. If probable cause is demonstrated, notice and hearing will follow. If an individual is committed under these provisions, there must be periodic review of his or her mental condition. In some instances the administrator of the South Dakota Human Services Center is empowered to release committed persons, § 27–7–52; § 27–10–2, 2.2. Release is automatic if a review hearing is not conducted during the twelfth month of commitment. § 27–7–69.

In this case, the record discloses that petitioner's treatment differs from that of other persons committed to the South Dakota Human Services Center in at least two respects: 1) petitioner did not receive a hearing at which the evidence presented focused on his present mental condition (logically, the evidence at a criminal trial on the issue of sanity focuses on a defendant's mental condition at the time of an alleged offense. *See State v. Waugh*, 80 S.D. 503, 509, 127 N.W.2d 429, 432 (1964)); and 2) petitioner may not be released by the Human Services Center Administrator after periodic review, but may be released only after a judicial determination that he has proved his sanity beyond a reasonable doubt.

The instant petition alleges in substance that: 1) the lack of a hearing on petitioner's present mental condition prior to his initial commitment violates his right to due process of law; 2) that the disparity between his commitment procedure and that of those treated under either of Chapters 27–7 or 27–7A of the South Dakota Compiled Laws violates his right to equal protection of the laws; and 3) that the burden of proof imposed upon him by the decision of the South Dakota Supreme Court is constitutionally impermissive.

## II. EXHAUSTION OF REMEDIES

█ Respondent contends that Petitioner has failed to exhaust his state remedies as required by 28 U.S.C. § 2254(b) because he has not availed himself of the remand ordered by the South Dakota Supreme Court. However, the very issues raised here were urged in petitioner's brief before the South Dakota Supreme Court (at, *inter alia*, pages 5 and 12–20) in urging affirmance of petitioner's release on constitutional grounds. Moreover, in the judgment of this Court, the South Dakota Supreme Court ruled on these issues. Petitioner's argument in his appeal brief was in effect an attack on the procedures approved and outlined in *State ex rel. Barnes v. Behan*, 80 S.D. 370, 124 N.W.2d 179 (1963), which the South Dakota Supreme Court expressly "decline[d] to modify." *State ex rel. Allen v. Radack*, S.D., 246 N.W.2d 661, 663 (1976).

The record does not indicate that there was any objection to petitioner's raising these issues on appeal, and the South Dakota Supreme Court did not reject petitioner's arguments on any procedural grounds. Accordingly, this Court can only conclude that the issues raised in the instant petition were raised and decided on their merits in the state court.

Further, under these circumstances it would be futile to require petitioner to go through the remand ordered by the South Dakota Supreme Court, since the lower state courts would be bound by the very decision he challenges. Complete exhaustion would require that petitioner make his record in the lower state courts, then take an appeal and attempt to convince the South Dakota Supreme Court to change its mind. On these facts, petitioner has exhausted his state remedies within the guidelines laid down in the case of *Eaton v. Wyrick*, 528 F.2d 477, 479 (8th Cir. 1975).

## III. THE MERITS

In *Baxstrom v. Herold*, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966), the United States Supreme Court reviewed a New York procedure whereby persons nearing the end of a prison term could be commit-ted upon a hearing before a Surrogate's Court, while others civilly committed were entitled to a jury determination of mental illness. In holding that this procedure was violative of equal protection principles, the Court stated:

> For purposes of granting judicial review before a jury of the question whether a person is mentally ill and in need of institutionalization, there is no conceivable basis for distinguishing the commitment of a person who is nearing the end of a penal term from all other civil commitments. 383 U.S. at 111–112, 86 S.Ct. at 763.

Subsequently, in *Bolton v. Harris*, 130 U.S.App.D.C. 1, 395 F.2d 642 (1968), the District of Columbia Circuit Court of Appeals assessed the impact of *Baxstrom v. Herold, supra*, upon a statutory scheme in the District of Columbia which required summary commitment of those acquitted by reason of insanity at the time of an offense. The procedure in the District of Columbia further required a judicial determination of sanity as a condition precedent to release, and imposed a burden of proof beyond a reasonable doubt upon those seeking habeas corpus relief from confinement imposed after an insanity acquittal. The District of Columbia procedure for involuntary civil commitment required notice and hearing, periodic review of the condition of those civilly committed, and possible release by the hospital administrator without a court order.

The *Bolton* court noted repeatedly that the defense of insanity at a criminal trial, and consequently the evidence received on such a defense, focuses on past insanity, and that an acquittal by reason of insanity means only that there is a reasonable doubt as to whether the defendant was sane at the time of the offense. 395 F.2d 646–650. The Court then stated its position as follows:

> Before the advent of *Baxstrom* and the new civil commitment safeguards of the 1964 Hospitalization of the Mentally Ill Act, [which created safeguards for civil commitment and release of those commit-

ted for mental illness], we said it was reasonable to treat those found not guilty by reason of insanity differently from other mentally ill persons because of the greater likelihood that the former will be dangerous to society, and that habeas corpus provided a sufficient safeguard for their rights. But in view of *Baxstrom* and the 1964 Act prior criminal conduct cannot be deemed a sufficient justification for substantial differences in the procedures and requirements for commitment, and habeas corpus may no longer be deemed to afford adequate protection against unwarranted detention. 395 F.2d at 649 (footnotes omitted).

After stating the general principle that equal protection analysis requires that persons acquitted of a crime by reason of insanity must be treated in a manner *substantially* similar to that of persons civilly committed for mental illness, the *Bolton* court recognized that differing treatment of these two classes of persons is justified in some respects. 395 F.2d at 651. The first of these justifiable differences is that, while one acquitted by reason of insanity must be given a hearing on present mental condition, *see Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), summary commitment is permissible for a limited period of time necessary for examination as to present mental condition. Secondly, although one committed after an insanity acquittal is entitled to the same periodic reviews afforded those civilly committed, the requirement that only a court may decide whether such a person may be released is justifiable under the *Bolton* rationale. The *Bolton* court did, however, hold that equal protection requires that those seeking release through habeas corpus have imposed upon them no greater burden of proof than that traditionally imposed upon petitioners in habeas corpus proceedings. 395 F.2d at 653. To the extent made necessary by this portion of its holding, the *Bolton* court modified the previous case of *Ragsdale v. Overholser*, 108 U.S.App.D.C. 308, 281 F.2d 943, 947 (1960). *Ragsdale* is one of the cases relied upon by the South Dakota Supreme Court in *State ex rel. Barnes v. Behan*, 80 S.D. 370, 374, 124 N.W.2d 179, 181 (1963) and again in *State ex rel. Allen v. Radack*, S.D., 246 N.W.2d 661, 663 (1976).

The majority of the jurisdictions which have ruled on cases such as this since *Bolton* was decided have adopted the general *Bolton* rationale. *State ex rel. Kovach v. Schubert*, 64 Wis.2d 612, 219 N.W.2d 341 (1974), *appeal dismissed* 419 U.S. 1117, 95 S.Ct. 799, 42 L.Ed.2d 817 (1975), *cert. denied*, 419 U.S. 1130, 95 S.Ct. 816, 42 L.Ed.2d 829 (1975); *People v. McQuillan*, 392 Mich. 511, 221 N.W.2d 569 (1974); *Wilson v. State of Indiana*, 259 Ind. 375, 287 N.E.2d 875 (1972); *Holderbaum v. Watkins*, 42 Ohio St.2d 372, 328 N.E.2d 814 (1975); *State v. Krol*, 68 N.J. 236, 344 A.2d 289 (1975). *But see State v. Allan*, 166 N.W.2d 752, 760 (Iowa, 1969); *Annotation, Validity of Statutory Provision For Commitment to Mental Institution of One Acquitted of Crime on Ground of Insanity Without Formal Determination of Mental Condition At Time of Acquittal*, 50 A.L.R.3d 144 (1973).

The United States Supreme Court has not directly confronted the issues raised here. *Cf. Lynch v. Overholser*, 369 U.S. 705, 714–720, 82 S.Ct. 1063, 1069–1072, 8 L.Ed.2d 211. It has, however, acknowledged without disapproval the *Bolton* line of cases. *Jackson v. Indiana*, 406 U.S. 715, 724, 92 S.Ct. 1845, 1851, 32 L.Ed.2d 435 (1972). Some courts have construed the *Jackson* reference to *Bolton* and its progeny as an express approval of *Bolton*. *People v. McQuillan, supra*, 221 N.W.2d 569 at 575 (1974); *State ex rel. Kovach v. Schubert, supra*, 219 N.W.2d 341 at 344–345 (1974); *cf. United States v. Ecker*, 543 F.2d 178, 197 n. 74 (D.C.Cir.1976).

 With respect to petitioner's initial commitment in the instant case, this Court adopts the reasoning of *Bolton, supra*. Petitioner's confinement violates his rights under the due process clause of the fourteenth amendment insofar as it is based solely on a "presumption of continuing insanity" arising from the acquittal by reason of mental illness. His commitment for treatment of a mental illness can be based

only upon a finding, made at the time of the commitment, that he is presently insane. Such a finding can only be based upon evidence presented at a hearing held for that purpose. It should be noted that while evidence of past insanity and criminal conduct existing at the time of the offense may not itself provide the sole basis for commitment, it is nevertheless relevant to a determination of present insanity. *Lynch v. Overholser*, 369 U.S. 705, 714, 82 S.Ct. 1063, 1069, 8 L.Ed.2d 211 (1962). *Bolton v. Harris*, 130 U.S.App.D.C. 1, 395 F.2d 642, 647 (1968). Further, nothing in this opinion is intended to preclude the State of South Dakota from temporarily confining persons acquitted by reason of mental illness for the purpose of examining them as to their present mental condition. *Id.* at 651. Since S.D.Comp.Laws §§ 23–45–20, 21 (1967) can be construed to require a separate hearing on present mental condition, they need not be declared unconstitutional in this case.

■ Petitioner's confinement also violates his rights under the equal protection clause of the fourteenth amendment. The fact that the state failed to prove his sanity at the time of an offense beyond a reasonable doubt does not justify treating him in a manner substantially different from that of others civilly committed by reason of a mental illness which makes them dangerous. In this case, the State of South Dakota must initiate proceedings under the provisions of S.D.Comp.Laws Chapter 27–7 in order to establish a justification for petitioner's continued confinement. It should be noted, however, that nothing in this opinion is intended to preclude the State of South Dakota from enacting, within constitutional limits, a separate statutory procedure for the commitment of those acquitted by reason of mental illness. *See United States v. Brawner*, 153 U.S.App.D.C. 1, 471 F.2d 969, 996–998 (1972). *cf. Warner v. State*, 244 N.W.2d 640, 642 n. 1 (Minn.1976).

■ With respect to the burden of proof imposed upon petitioner by the South Dakota Supreme Court, this Court adopts in part the reasoning of *Bolton, supra*. *Bolton's* holding that the "preponderance of evi-

dence" standard must apply has come under criticism. *Dixon v. Jacobs*, 138 U.S.App. D.C. 319, 427 F.2d 589, 601–605 (1970) (concurring opinion of Judge Leventhal); *United States v. Ecker*, 543 F.2d 178, 192 n. 52 (D.C.Cir. 1976). This criticism has some merit since an acquittal by reason of insanity does establish beyond a reasonable doubt that the defendant committed the *act* with which he or she was charged. *Lynch v. Overholser*, 369 U.S. 705, 714, 82 S.Ct. 1063, 1068, 8 L.Ed.2d 211 (1962).

On the other hand, it seems incongruous to apply the "beyond a reasonable doubt" burden of proof to cases such as this. This standard of proof was developed at common law, and is embodied in our constitutional concept of due process, as a primary means of protecting individual liberty. *In re Winship*, 397 U.S. 358, 363–364, 90 S.Ct. 1068, 1072–1073, 25 L.Ed.2d 368 (1970); *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 1890–1891, 44 L.Ed.2d 508 (1975). In this case, however, the standard is being applied as a means of ensuring confinement in all cases where a reasonable doubt can be found about the propriety of release. Because of this incongruity, created by the use of a standard peculiarly adapted to criminal prosecutions, this Court concludes that the burden imposed upon petitioner in *State ex rel. Allen v. Radack*, S.D., 246 N.W.2d 661 (1976) violates his fourteenth amendment due process rights.

The question of what standard should be applied in habeas corpus actions brought by those confined after a mental illness acquittal then remains. *Bolton v. Harris, supra*, held on equal protection grounds that persons confined by reason of an insanity acquittal have no greater burden of proof in habeas corpus actions than those civilly committed. 395 F.2d 642 at 653. Unfortunately, South Dakota law does not clearly reveal what burden of proof is imposed upon those seeking habeas corpus relief from civil confinement in the South Dakota Human Services Center. South Dakota case law does indicate that in general habeas corpus actions the standard of proof is somewhat flexible. In the case of *State ex*

*rel. Haff v. Schlachter*, 21 S.D. 276, 111 N.W. 566 (1907) it was held that one seeking to attack the factual basis of an executive warrant extraditing him to another state must demonstrate his entitlement to relief by clear and satisfactory evidence. One seeking to directly contradict an original record, rather than supply an omission in it or establish an inconsistency within it, has a heavy burden in South Dakota. *State ex rel. Parker v. Jameson*, 75 S.D. 196, 61 N.W.2d 832 (1953).

This Court is thus faced with the task of attempting to fashion a standard of proof which will strike a balance between individual liberty interests and the societal interest in ensuring that persons who have committed violent criminal acts by reason of mental illness are not prematurely released. In the judgment of this Court, the "clear and convincing evidence" test should suffice to strike this balance. Of course, the state of South Dakota is free to adopt for future cases any standard it wishes, short of "beyond a reasonable doubt."

Throughout the instant litigation there has been some confusion as to whether petitioner may be committed to the Human Services Center for alcohol addiction. This Court wishes to note that nothing in this opinion is intended to disturb or criticize the statement of the South Dakota Supreme Court that

> The real question in this case is whether or not petitioner has an abnormal mental condition that makes it probable that he would be a danger to himself or others. 246 N.W.2d at 663.

In summary, the State of South Dakota must initiate commitment proceedings under the provisions of S.D.Comp.Laws Chapter 27–7 (1967). In its brief, the State represents that it is prepared to begin these proceedings shortly. This Court will not release petitioner unless the State has failed to initiate such proceedings within thirty days of the date of the entry of the Order in this case. *See Bolton v. Harris*, 130 U.S.App.D.C. 1, 395 F.2d 642, 654 n. 70 (1968). If petitioner again attempts to seek habeas corpus relief in the state courts, the

burden will be upon him to establish his entitlement to release by clear and convincing evidence. Petitioner does not present any issues concerning the applicability of periodic review and non-judicial release to his situation, and this Court does not decide any of these issues. It is hoped that South Dakota will take action to establish a clearly defined procedure for future treatment of those acquitted of crimes by reason of insanity.

The foregoing shall constitute this Court's findings of fact and conclusions of law.